[Crim. No. 20710. Feb. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND E. JOHNSON, Defendant and Appellant.

COUNSEL

James R. Goff, under appointment by the Supreme Court, for Defendant and Appellant.

Wilbur F. Littlefield, Public Defender (Los Angeles), Dennis A. Fischer and H. Reed Webb, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TOBRINER, J.**—On July 12, 1977, defendant Johnson was convicted of three counts of robbery (Pen. Code, § 211).[1] On this appeal, he contends that his conviction should be reversed on the grounds, among others, that he was denied his right to a speedy trial and that substantial evidence does not support the judgment.

Section 1382, which interprets the state constitutional right to a speedy trial (see Cal. Const., art. I, § 15), provides that absent a showing of good cause, a defendant accused of a felony is entitled to a dismissal of the charges against him if he is not brought to trial within 60 days of the filing of the information. Defendant Johnson was not brought to trial within this statutory period. Instead, the trial court, at the request of the public defender, and over defendant's express objection, repeatedly continued the case, with the result that trial commenced 144 days after the filing of charges. Defendant raised his speedy trial claim in the trial court, but did not seek pretrial appellate intervention.

We summarize briefly our conclusions respecting the speedy trial issue. We conclude, first, that when a client expressly objects to waiver of his right to a speedy trial under section 1382, counsel may not waive

---

[1]Unless otherwise indicated, all statutory references are to sections of the Penal Code.

that right to resolve a calendar conflict when counsel acts not for the benefit of the client before the court but to accommodate counsel's other clients. Secondly, we conclude that, at least in the case of an incarcerated defendant, the asserted inability of the public defender to try such a defendant's case within the statutory period because of conflicting obligations to other clients does not constitute good cause to avoid dismissal of the charges. Finally, we reaffirm the holding of *People* v. *Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452], that a defendant seeking post-conviction review of denial of a speedy trial must prove prejudice flowing from the delay of trial; we affirm here because defendant proved no prejudice.

In discussing defendant's contention that substantial evidence does not support his conviction, we take the opportunity to review and define the California standard for review of this contention in light of the recent United States Supreme Court decision in *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781]. ■■■ We explain that whenever the evidentiary support for a conviction faces a challenge on appeal, the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Applying this test to the present case, we conclude that substantial evidence does support the conviction.

1. *The trial court's failure to bring defendant to trial within 60 days from the filing of the information does not constitute reversible error.*

Independently of the parallel federal constitutional provision (U.S. Const., 6th Amend.) the California Constitution in article I, section 15 guarantees a criminal defendant's right "to a speedy public trial." The Legislature has separately established, among the basic rights of a defendant in a criminal action, the defendant's entitlement "to a speedy and public trial." (§ 686, subd. 1.) As the Legislature has made clear, "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. . . . It is therefore recognized that both the people and the defendant have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both the prosecution and the defense, to expedite such proceedings to the greatest degree that is consistent with

the ends of justice.... [¶] ...Continuances shall be granted only upon a showing of good cause. The convenience of the parties is not in and of itself good cause...." (§ 1050.)

Although the federal constitutional right to a speedy trial may indeed have an "amorphous quality" (*Barker* v. *Wingo* (1972) 407 U.S. 514, 522 [33 L.Ed.2d 101, 112, 92 S.Ct. 2182]), our own Legislature has defined certain time periods beyond which the right suffers infringement and has simplified our courts' application of the right. Section 1382 provides: "The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases:... [¶] 2. When a defendant is not brought to trial in a superior court within 60 days after the finding of the indictment or the filing of the information...; except that an action shall not be dismissed under this subdivision if it is set for trial on a date beyond the 60-day period at the request of the defendant or with his consent, express or implied,...and if the defendant is brought to trial on the date so set for trial or within 10 days thereafter."

In applying section 1382 to the present case, three questions arise: (1) Were the postponements in the present case granted at the request of defense counsel but over defendant's express objection, made "at the request of the defendant or with his consent?" (2) Did the trial court have "good cause" for denying defendant's motion to dismiss for lack of a speedy trial? (3) Was defendant prejudiced by the delay in bringing his case to trial? Initially we set forth the procedural history of this case as it bears on defendant's claim that he was denied a speedy trial; we then analyze the three issues in the order listed.

On February 2, 1977, defendant Johnson, represented by the public defender, and codefendant Sumlin were arraigned in superior court and entered pleas of not guilty. Trial was set for March 23. On that date, defendant Johnson appeared in court with his counsel, Deputy Public Defender Dennis Cohen. Cohen explained that he was presently engaged in the trial of another case and had no available date until May 6. The trial court viewed this explanation as an implied request for a continuance. Over defendant's objection, the court found "good cause" for the continuance and postponed trial until May 6.[2] On May 6,

---

[2]On March 23 the following exchange occurred: "THE COURT: Number four on the calendar, Raymond Johnson and J. P. Sumlin.... [¶] The matter is on the court's calendar for trial.

defense counsel again requested a continuance, explaining that he had three other trials to complete before the *Johnson* case. The court again, "for good cause," over defendant's objection, granted a continuance to June 14.[3]

On May 27, defendant filed a petition on his own behalf for writ of habeas corpus, seeking a dismissal on the ground that he had been denied a speedy trial. Defendant pointed out that his counsel "asked the court for and was granted two continuances without petitioner's consent or waiver or waiver of time that well exce[e]ded sixty days" after the filing of the information. The court summarily denied defendant's petition.

---

"MR. COHEN: I am presently engaged in People versus Mashell in trial in this department. I also have the case of People versus Phillip, which is number five on this calendar, and which is an older case than Johnson. I also have the Hughes matter set for the 28th which is a custody kidnapping-robbery case and also older than Mr. Johnson's case and some unfortunate bailout over a year old out of Department 122 and 123.

"Therefore the realistic earliest date I could be available for Mr. Johnson is May 6th. Mr. Johnson has informed me, being in custody, he will not waive any time.

"THE COURT: All right... Mr. Johnson, do you waive your right to trial within the statutory period and personally consent to this matter set for trial on the date requested by your counsel, May 6th?

"DEFENDANT JOHNSON: No.

"THE COURT: Very well. There being good cause shown, the matter is continued to May 6th."

[3]On May 6, the court again called the matter for trial: "THE COURT: Number 6 on the calendar, Raymond Johnson and J.D. Sumlin... [¶] The matter is on the court's calendar for trial.

"MR. COHEN: For the following reason, I cannot announce ready this morning. The Perez matter which is on its 10th day is assigned for trial to Department 128. The court has thereafter ordered me to try the Stevens matter which is presently set for the 11th. I am hopeful I will be finished with the Perez matter then.

"With the trailing time necessary to handle Stevens, then the next matter I have is Mr. Anderson, which the court has also ordered me to try after Perez and then Stevens. That is set for the 27th. Therefore, we will probably be trailing on the Stevens matter, I would figure 10 days which would be to the 7th, approximately, of June, and that case will probably take four days to try which is to the 13th. I will be concluding that matter, and I have talked with [the deputy district attorney] and Mrs. Ornelas, your clerk, about putting the matter over to June 14 when it looks like I will be done with Perez, Stevens and Phillips....

"THE COURT: All right, Mr. Johnson, I must inquire for my record: Do you waive your right to trial within the statutory period and personally consent to this matter being set for trial on the date requested by counsel, June 14 which it appears to the court is the earliest opportunity counsel has to try your matter.

"THE DEFENDANT: No, I don't.

"THE COURT: There being good cause shown, the matter is continued to that day, June 14."

On June 14, the court excused counsel until June 23.[4] A minute order for June 23, 1977, indicates that on that day the trial court, "due to congested calendar," trailed trial to a date "not later than June 27, 1977, or to such earlier date as a trial court is available (deemed 10th day, pursuant to stipulation)." On June 27, the court called the case for trial, and jury selection began. Thus defendant was brought to trial 144 days after the information was filed against him. During this entire period defendant, unable to make bail, was confined in jail.

On July 12, after the presentation of evidence at trial,[5] the jury returned a verdict finding defendant guilty of the three counts of robbery with which he was charged, but finding not true the allegation that defendant was armed with a knife. The jury acquitted codefendant Sumlin.

Although defendant raised his claim of denial of a speedy trial by a pretrial writ of habeas corpus in the trial court, he did not seek pretrial appellate resolution of that issue. Following conviction, however, he appealed, asserting that the charges against him should have been dismissed for failure to bring the case to trial within 60 days from the filing of the information.

 The postponement of trial to May 6, 1977, which put the trial date beyond the 60-day period, the second continuance to June 14, and the third continuance to June 23 were each granted at the express or implied request of the public defender, but in each instance over the ex-

---

[4]On June 14, the court again called the case for trial. Deputy Public Defender Cohen answered for the defense: "MR. COHEN: The defense announce ready at this time.... [¶] I would ask that the matter be listed, and would state for the record, pursuant to my conference with [the deputy district attorney], that if at the end of the tenth day trailing time the district attorney does need up...to five additional working days to prepare the matter, that is agreeable with the defense, Your Honor....

"THE COURT: The record will reflect that we are listing, with the acquiescence of the court coordinator, who has been advised in the premis[e]s, to wit, that Mr. Cohen has another matter, to wit, Phillip Moure, with the tenth day to be the 20th. [¶] Hopefully, this will speed up the process of an early disposition of some of your cases....

"MR. COHEN: I would expect—Your Honor, perhaps an adjustment. I would suggest maybe a comeback date of Thursday, the 23rd, which would be the nineteenth day.

"THE COURT: All right. Rather than have each of you gentlemen brought into court or to attend court every day until this matter is likely to go out—it probably wouldn't go out until the 23rd—so we'll excuse you all until that time."

[5]During the trial the public defender requested and was granted two one-day continuances "due to previous engagements."

press objection of defendant. The postponements were not sought nor granted to serve the best interest of the defendant; they stem from calendar conflicts of the public defender, and the decision of the public defender and the court to resolve these conflicts by trying other cases in advance of that of defendant. We thus face the initial issue: whether appointed defense counsel may under these circumstances waive his client's right to a trial within the statutory period of section 1382 over the express objection of his client.

### A. Counsel lacked authority to waive defendant's right to a speedy trial under section 1382.

The power of appointed counsel to control judicial strategy and to waive nonfundamental rights despite his client's objection (see *Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 781 [126 Cal.Rptr. 251, 543 P.2d 619] and cases there cited)[6] presumes effective counsel acting for the best interest of the client. As the court pointed out in *People* v. *Corona* (1978) 80 Cal.App.3d 684, 720 [145 Cal.Rptr. 894], "[e]ffectiveness . . . is not a matter of professional competence alone. It also includes the requirement that the services of the attorney be devoted solely to the interest of his client undiminished by conflicting considerations." Thus when the public defender, burdened by the conflicting rights of clients entitled to a speedy trial, seeks to waive one client's right, that conduct cannot be justified on the basis of counsel's right to control judicial proceedings. The public defender's decision under these

---

[6]The federal constitutional right to a speedy trial, as explained in *Barker* v. *Wingo* (1972) 407 U.S. 514 [33 L.Ed.2d 101, 92 S.Ct. 2182], is a fundamental right, which can be waived only through a voluntary, knowing, and intelligent decision by the defendant himself. (See 407 U.S. at pp. 525-526 [33 L.Ed.2d at p. 114].) Defendant Johnson, however, does not contend that the 144-day delay in the present case infringed his right to a speedy trial under the federal Constitution, and a comparison of the present case with *Barker* v. *Wingo, supra,* and the cases there cited indicates that the delay in the case at bar was not sufficient to abridge defendant's rights under the federal Constitution.

*Townsend* v. *Superior Court, supra,* 15 Cal.3d 774, 781, suggests that the state constitutional right to a speedy trial is also a fundamental right. In view of our disposition of this appeal, however, we need not reconsider *Townsend's* holding that a defendant's rights under section 1382, a statute enacted to supplement and define the constitutional guarantee (see *Sykes* v. *Superior Court* (1973) 9 Cal.3d 83, 89 [106 Cal.Rptr. 786, 507 P.2d 90]; *People* v. *Godlewski* (1943) 22 Cal.2d 677, 682 [140 P.2d 381]) are not of fundamental character. Likewise we need not here resolve whether a defendant's rights under that section are "substantial" in character, such that counsel may not waive such rights contrary to the instructions of his client. (See *Linsk* v. *Linsk* (1969) 70 Cal.2d 272, 278 [74 Cal.Rptr. 544, 449 P.2d 760]; *Townsend* v. *Superior Court, supra,* 15 Cal.3d 774, 785 (Mosk, J., dis.): see generally Comment (1978) 13 U.S.F. L.Rev. 177.)

circumstances is not a matter of defense strategy at all; it is an attempt to resolve a conflict of interest by preferring one client over another. As a matter of principle, such a decision requires the approval of the disfavored client. (Cf. ABA Code of Prof. Responsibility, EC 5-16.) We conclude that the consent of appointed counsel to a postponement of trial beyond the statutory period, if given solely to resolve a calendar conflict and not to promote the best interests of his client, cannot stand unless supported by the express or implied consent of the client himself.[7]

The foregoing conclusion, although derived from the ethical principle that an attorney owes an undivided loyalty to the interests of his client, appears to us equally essential to fulfill the objectives of section 1382. That section confers a right upon the defendant, but that right becomes meaningless if counsel can disregard defendant's views and interests and waive the right. Routine waivers to accommodate crowded calendars of defense counsel, moreover, defeat the public interest in speedy criminal trials.

The reasoning of *Townsend* v. *Superior Court, supra*, 15 Cal.3d 774, imposes no barrier to our conclusion that under the facts of the present case counsel could not waive defendant's statutory right to a speedy trial without defendant's consent. In *Townsend*, the court found that the consent of counsel alone without that of the client sufficed to satisfy section 1382. (See 15 Cal.3d at p. 780.) Our opinion described the exceptional circumstances under which counsel alone could not waive his client's rights under section 1382: if counsel were "ineffective" (p. 781), "inadequate" (p. 784), "lazy or indifferent" (*ibid.*). The *Townsend* majority concluded, however, that the case before it did not involve such exceptional circumstances, that defense counsel "is pursuing his client's best interests in a competent manner." (*Id.*)[8] *Townsend* accordingly

---

[7]Section 1382 permits a postponement "at the request of the defendant or with his consent, express or implied. . . ." Under this language, the failure of defendant or his counsel to make timely objection to a postponement constitutes implied consent to the postponement. (See *People* v. *Wilson* (1963) 60 Cal.2d 139, 146 [32 Cal.Rptr. 44, 383 P.2d 452].)

[8]One may question whether the facts as recited in the *Townsend* decision support the court's conclusion that defense counsel, in waiving his client's rights under section 1382, was engaged in "pursuing his client's best interests in a competent manner." (15 Cal.3d at p. 784.) That question is now moot. We do not accept any construction of

found counsel's waiver of defendant's rights under section 1382 sufficient to justify the various postponements of the trial.[9]

The reasoning of *Townsend*, applied to the facts of the present case, leads to a result different than that of *Townsend*. Here counsel thrice sought postponements over the express objection of his client. In contrast to *Townsend*, he did not seek additional time to prepare the defense or to secure attendance of witnesses. On the record before us, defense counsel entertained no reason to believe delay would benefit defendant; since counsel knew that defendant was incarcerated pending trial, he knew that delay was probably contrary to the best interests of his client. Thus in seeking delay counsel was not "pursuing his client's best interests in a competent manner" (*Townsend* v. *Superior Court, supra*, 15 Cal.3d 774, 784). Instead, he was deliberately subordinating the statutory right of defendant Johnson to a speedy trial to the rights of other clients. Given his caseload and the conflicting demands upon his time, counsel may have reasonably arranged and ordered the interests of his clients. An attorney, however, owes undivided loyalty to each client (see ABA Code of Prof. Responsibility, EC 5-1); he does not enjoy the prerogative of weighing the rights of one client against those of another.[10]

Under the circumstances of the present case we conclude that counsel, in view of his client's express objection, may not waive his right to a speedy trial under section 1382. Accordingly, the postponements

---

*Townsend* which might lead to the conclusion that counsel who, over his client's objection, subordinates his client's right to a speedy trial to the needs of other clients is somehow nonetheless affording the disfavored client "competent" representation and acting in the best interest of that client.

[9]In analyzing the record in *Townsend* we stated at one point that "[w]hile the record discloses that on November 12 defense counsel responded that he was 'ready' for trial, in truth and in fact he was not 'ready' to proceed because of legitimate commitments in another case . . . ." (15 Cal.3d 774, 783.) We agree with the suggestion of the Los Angeles County Public Defender that this language should not be construed to prevent defense counsel from informing the court of every case in which he is presently prepared for trial, even if trial dates may conflict, so that the court can determine the order in which the cases should be tried.

[10]We do not in any way question the integrity or competence of defendant's counsel below. We have no doubt that under the circumstances he exerted his best efforts to accommodate the needs and rights of his various clients. Our point is that defense counsel should not be placed in a situation in which he must subordinate the right of one client to a speedy trial to the rights of another client; once counsel must confront that dilemma, his best efforts may be insufficient to protect the individual rights of each of his clients.

granted by the trial court in the present case at the instance of the public defender were not granted "at the request of the defendant or with his consent" within the meaning of section 1382, subdivision 2.

B. ▮ *The record does not show "good cause" to deny defendant's motion to dismiss.*

We come then to the ensuing issue of whether the congested calendar of appointed counsel can serve as sufficient "good cause" for a continuance and whether the court on that ground can avoid the designated dismissal. A defendant who is incarcerated pending trial, such as defendant Johnson, suffers particular harm when he is denied his right to trial within the statutory period.[11] The following discussion of the "good cause" provision of section 1382 is limited to the case of an incarcerated defendant.

Under section 1382, if a case is continued beyond the 60-day period without the request or consent of the defendant, the court must dismiss the action "unless good cause to the contrary is shown." In the present case the deputy public defender, who requested the continuances, did not move to dismiss. Defendant attempted to do so by writ of habeas corpus, but the trial court denied the writ. Thus no occasion arose at which the prosecution was compelled to meet its burden of showing good cause.[12] The trial court did, however, expressly find "good cause" each time it granted a continuance; these rulings suggest that it would have found good cause to deny any motion to dismiss.

---

[11]In *Barker v. Wingo, supra,* 407 U.S. 514, the court stated that: "We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent." (407 U.S. at pp. 532-533 [33 L.Ed.2d at p. 118].) (Fn. omitted.)

We note that Penal Code section 1048, as amended in 1979, gives priority in trial setting to cases in which the defendant is in custody.

[12]In *People v. Morino* (1890) 85 Cal. 515, 517 [24 P. 892], the court explained that on a motion to dismiss, "It was enough for the defendant to show that the time fixed by the statute, after information filed, had expired, and that the case had not been postponed on his application. If there was any good cause for holding him for a longer time without a trial, it was for the prosecution to show it.'

■ What constitutes good cause for the delay of a criminal trial is a matter that lies within the discretion of the trial court. (*People v. McFarland* (1962) 209 Cal.App.2d 772, 776 [26 Cal.Rptr. 596]; see *In re Lopez* (1952) 39 Cal.2d 118, 120 [245 P.2d 1]; *People v. Superior Court (Lerma)* (1975) 48 Cal.App.3d 1003, 1007 [122 Cal.Rptr. 267].) In reviewing trial courts' exercise of that discretion, the appellate courts have evolved certain general principles. The courts agree, for example, that delay caused by the conduct of the defendant constitutes good cause to deny his motion to dismiss.[13] Delay for defendant's benefit also constitutes good cause.[14] Finally, delay arising from unforeseen circumstances, such as the unexpected illness or unavailability of counsel or witnesses constitutes good cause to avoid dismissal.[15] Delay attributable to the fault of the prosecution, on the other hand, does not constitute good cause.[16] Neither does delay caused by improper court administration. (*Herrick v. Municipal Court* (1957) 151 Cal.App.2d 804, 810 [312 P.2d 264].)

Although we perceive no objection to the principles stated in the preceding paragraph, we question those decisions which assume that court

[13]See *People v. Floyd* (1970) 1 Cal.3d 694, 707 [83 Cal.Rptr. 608, 464 P.2d 64]; *Hankla v. Municipal Court* (1972) 26 Cal.App.3d 342, 363-364 [102 Cal.Rptr. 896]; *People v. Bryant* (1970) 5 Cal.App.3d 563, 571 [85 Cal.Rptr. 388]; *Herrick v. Municipal Court* (1957) 151 Cal.App.2d 804, 809 [312 P.2d 264]. In *Floyd* we stated that "[a]lthough a criminal defendant may not be deprived of a speedy trial because the prosecution—or the defense—is lazy or indifferent, or because the prosecution seeks to harass the defendant rather than bring him fairly to justice, a criminal defendant may not juggle his constitutional rights in an attempt to evade prosecution. He may not demand a speedy trial and demand adequate representation, and, by the simple expedient of refusing to cooperate with his attorney, force a trial court to choose between the two demands, in the hope that a reviewing court will find that the trial court has made the wrong choice. We cannot tolerate such bad faith and we are not constitutionally required to do so." (1 Cal.3d at p. 707.)

[14]See *Marcotte v. Municipal Court* (1976) 64 Cal.App.3d 235, 242-243 [134 Cal.Rptr. 314]; *People v. Rutkowsky* (1975) 53 Cal.App.3d 1069, 1072 [126 Cal.Rptr. 104]; *Hankla v. Municipal Court, supra,* 26 Cal.App.3d 342, 361; *People v. Tahtinen* (1958) 50 Cal.2d 127, 131 [323 P.2d 442].

[15]See *Batey v. Superior Court* (1977) 71 Cal.App.3d 952, 956-957 [139 Cal.Rptr. 689] (illness of codefendant); *People v. Salcido* (1968) 263 Cal.App.2d 1, 4-5 [69 Cal.Rptr. 193] (absence of witnesses); *People v. Bracamonte* (1967) 253 Cal.App.2d 980, 983-984 [61 Cal.Rptr. 830] (illness of witness); *People v. Camilo* (1886) 69 Cal. 540, 541 [11 P. 128] (illness of judge). Unavailability of a prosecution witness, however, does not constitute good cause unless the prosecution has used due diligence to procure his attendance. (*Pickett v. Municipal Court* (1970) 12 Cal.App.3d 1158, 1162 [91 Cal.Rptr. 315]; *Schindler v. Municipal Court* (1962) 203 Cal.App.2d 13, 15-16 [21 Cal.Rptr. 217]; *Caputo v. Municipal Court* (1960) 184 Cal.App.2d 412, 419-520 [7 Cal.Rptr. 435].)

[16]*Batey v. Superior Court, supra,* 71 Cal.App.3d 952, 957-958; *People v. Molinari* (1937) 23 Cal.App.2d Supp. 761, 766-767 [67 P.2d 767].

congestion or excessive public defender caseloads necessarily constitute good cause to deny dismissal. (See, e.g., *In re Lopez, supra,* 39 Cal.2d 118, 120 (court congestion); *People* v. *Weiss* (1958) 50 Cal.2d 535, 559 [327 P.2d 527] (same); *People* v. *Yniquez* (1974) 42 Cal.App.3d Supp. 13, 19 [116 Cal.Rptr. 626] (same); *People* v. *Superior Court (Lerma), supra,* 48 Cal.App.3d 1003, 1009-1010 and cases there cited (unavailability of public defender).) In 1901 this court in *In re Begerow* (1901) 133 Cal. 349, 355 [65 P. 828], stated that the purpose of the state constitutional protection of the right to a speedy trial is "to protect those accused of crime against possible delay, caused either by willful oppression, or the neglect of the state or its officers." "[T]he state or its officers," we must observe, includes not only the prosecution, but the judiciary and those whom the judges assign to represent indigent defendants; "oppression" or "neglect" may include the failure to provide the facilities and personnel needed to implement the right to speedy trial.

A defendant's right to a speedy trial may be denied simply by the failure of the state to provide enough courtrooms or judges to enable defendant to come to trial within the statutory period. The right may also be denied by failure to provide enough public defenders or appointed counsel, so that an indigent must choose between the right to a speedy trial and the right to representation by competent counsel. "[U]nreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn." (*Barker* v. *Wingo, supra,* 407 U.S. 514, 538 [33 L.Ed.2d 101, 121], White, J., conc.)

The American Bar Association's Standards for Speedy Trial (ABA Project on Standards for Crim. Justice, Stds. Relating to Speedy Trial (Approved Draft 1968)) discusses the problem of delay caused by court congestion. It states that "delay arising out of the chronic congestion of the trial docket should not be excused.... [¶] But, while delay because of a failure to provide sufficient resources to dispose of the usual number of cases within the speedy trial time limits is not excused, the standard does recognize congestion as justifying added delay when 'attributable to exceptional circumstances.' Although it is fair to expect the state to provide the machinery needed to dispose of the usual business of the courts promptly, it does not appear feasible to impose the same requirements when certain unique, nonrecurring events have produced an inordinate number of cases for court disposition." (Pp. 27-28.)

The same reasoning, distinguishing between chronic conditions and exceptional circumstances, applies to the delay caused by the crowded calendars of public defenders. The state cannot reasonably provide against all contingencies which may create a calendar conflict for public defenders and compel postponement of some of their cases. On the other hand, routine assignment of heavy caseloads to understaffed offices, when such practice foreseeably will result in the delay of trials beyond the 60-day period without defendant's consent, can and must be avoided. A defendant deserves not only capable counsel, but counsel who, barring exceptional circumstances, can defend him without infringing upon his right to a speedy trial. Thus the state cannot rely upon the obligations which an appointed counsel owes to other clients to excuse its denial of a speedy trial to the instant defendant.

A facile assumption that conflicts in the calendar of the public defender constitute good cause for delay may result in denying indigent defendants the equal protection of the laws. As a dissenting opinion in *Townsend* v. *Superior Court, supra,* 15 Cal.3d 774, points out: "If an affluent defendant chooses to employ counsel who is involved in many other cases, then the courts, quite appropriately can require the defendant to wait until his selected counsel is ready for trial; if the delay is unacceptable to the defendant, he can always engage another, less burdened attorney. The indigent defendant, however, can exercise no such option. If the public defender who is appointed to represent him is already handling so many cases that the defendant's case must 'trail' beyond the 60-day period, the indigent necessarily loses his statutory right to a speedy trial." (15 Cal.3d 774, 788, dis. opn. of Tobriner, J.)

In the present case the record does not indicate any ground for the postponements of March 23 and May 6 which would suggest good cause to deny defendant's motion to dismiss. When the public defender moved for a continuance on March 23, he clearly posited his request not upon a benefit to Johnson but upon commitment to clients other than Johnson. He revealed that his representation of other clients created a conflict which he proposed to resolve to Johnson's detriment. Under these circumstances we think the court should inquire whether the assigned deputy could be replaced by another deputy or appointed counsel who would be able to bring the case to trial within the statutory period. In some instances, appointment of new counsel will serve to protect defendant's right to a speedy trial. If, on the other hand, the court cannot ascertain a feasible method to protect defendant's right, the court will have no alternative but to grant a continuance; upon a subse-

quent motion to dismiss, however, the court must inquire into whether the delay is attributable to the fault or neglect of the state; if the court so finds, the court must dismiss.[17]

The dismissal of charges when a defendant is denied his right to a speedy trial whether because of conflicting obligations of appointed counsel, congested court calendars, or other causes will not result in defendants' escaping trial for serious crimes they may have committed. Under section 1387, the dismissal of a felony charge for lack of a speedy trial is not a bar to further prosecution unless the charge has been previously dismissed on such grounds. We are confident that in cases in which there has been a prior dismissal, both court and counsel will give special attention to securing a speedy trial, granting the case priority if essential to that purpose.

The trial court on March 23, 1977, did not inquire into any available means of protecting defendant's right to a speedy trial. It accepted the public defender's recital of conflicting obligations without inquiring whether the conflict arose from exceptional circumstances or resulted from a failure of the state to provide defendant with counsel able to protect his right. The record of the proceeding of March 23 thus does not demonstrate good cause to avoid dismissal of the charges. The same reasoning applies to the continuance ordered by the court on May 6, 1977.

When defendant, on May 27, 1977, by writ of habeas corpus moved to dismiss the charges, the trial court summarily denied his petition.[18]

---

[17]Because appointed counsel are furnished by the state, fault or neglect by such counsel may under the reasoning of this opinion result in the dismissal of charges. We observe, however, "that both the people and the defendant have the right to an expeditious disposition, and to that end it [is] the duty of all courts and judicial officers and of all counsel, both the prosecution and the defense, to expedite such proceedings to the greatest degree that is consistent with the ends of justice...." (§ 1050.) It would therefore be improper for appointed counsel deliberately to overbook his calendar or otherwise conduct himself so as to delay trial and thereby secure a dismissal of the charges against his client; such deliberate delay, because undertaken for the benefit of the defendant, would constitute good cause to deny a motion to dismiss.

[18]We have consistently held that a defendant's preferred remedy for pretrial review of a denial of his right to speedy trial is a petition for mandate or prohibition. (See *People* v. *Wilson* (1963) 60 Cal.2d 139, 149-150 [32 Cal.Rptr. 44, 383 P.2d 452].) We have also recognized, however, that relief may be available by writ of habeas corpus in exceptional cases. (*Id.* at p. 150.) In the present case, defense counsel's failure to assert defendant's speedy trial right justified defendant's assertion of that right by writ of habeas corpus in the trial court.

We believe that the court, instead, should have required the prosecution to show good cause to avoid the dismissal. Thus in summarily denying defendant's motion, the court committed error which, on the record, and in the absence of a prosecution showing of good cause, resulted in denying defendant's right to a speedy trial under section 1382.

C. ■ *Defendant failed to prove prejudice arising from state's delay in bringing him to trial.*

We come therefore to the question whether the abridgment of a defendant's right under section 1382 requires a reversal of the conviction. In *People* v. *Wilson, supra,* 60 Cal.2d 139, 151-152, we addressed this issue and concluded that a defendant raising the issue after conviction must prove not only unjustified delay in bringing his case to trial but also prejudice flowing from that delay.

We stated in *Wilson* that if a defendant seeks pretrial relief, he is "not required to affirmatively show that he [has] been prejudiced by the delay." (*Id.,* at p. 151; see *Scherling* v. *Superior Court* (1978) 22 Cal.3d 493, 504 [149 Cal.Rptr. 957, 585 P.2d 219].) Upon appellate review following conviction, however, a defendant who seeks to predicate reversal of a conviction upon denial of his right to speedy trial must show that the delay caused prejudice: this court, in reviewing the judgment of conviction, must "weigh the effect of the delay in bringing defendant to trial or the fairness of the subsequent trial itself." (60 Cal.2d at p. 151.) Because defendant in *Wilson* failed to show that he was "in any way prejudiced by the setting of his trial for a date approximately two months beyond the last day to which he had consented," we concluded that the asserted errors did not warrant reversal of defendant's conviction, and affirmed the judgment. (*Id.,* at p. 154.)

In the present case the record shows no prejudice to defendant arising from the delay. This is not a case in which the statute of limitations would have been a bar to new charges, or one in which a dismissal would itself have barred refiling. Defendant does not assert that the delay actually prejudiced his defense. Indeed, defendant by his silence on this issue essentially concedes the absence of prejudice, urging that we overrule *Wilson* and reverse his conviction without proof of prejudice.

We adhere, however, to the reasoning and holding in *Wilson.* That decision represents a considered policy judgment that defendants should

seek review of speedy trial claims before trial. The decision recognized also that once a defendant has been tried and convicted, the state Constitution in article VI, section 13, forbids reversal for nonprejudicial error. When a defendant has received a fair trial, we believe, neither the public interest nor the scope of article VI, section 13, call for reversal of that conviction because of nonprejudicial error in the scheduling of that trial.

In summary, calendar conflict by appointed counsel does not permit counsel to waive defendant's rights under section 1382 over his client's express objection; likewise calendar conflict on the part of defense counsel or the trial court cannot routinely serve to justify denial of a motion to dismiss when trial is postponed beyond the statutory period. These conclusions, we believe, are essential to enforce the right of defendants and the People to a speedy trial and to forestall the danger that counties may adopt a practice of regular and routine circumvention of the 60-day period specified by the Legislature.[19] In the interest of justice and sound judicial adminsitration, our conclusion that congested calendars of defense counsel or trial courts will not necessarily constitute good cause to deny a motion to dismiss under section 1382 should not be applied to rulings denying such a motion to dismiss rendered prior to the date of finality of this opinion.

2. *Substantial evidence supports defendant's conviction.*

Defendant contends that substantial evidence does not support his conviction. The standard for appellate review of whether substantial evidence upholds a conviction has been discussed in many opinions. In view, however, of the recent decision of the United States Supreme Court in *Jackson* v. *Virginia, supra,* 443 U.S. 307, and the suggestion that the California standard of appellate review may be inconsistent with *Jackson,* we think it appropriate here to restate the California standard to demonstrate that it complies with federal constitutional requirements.

---

[19]We do not here decide under what circumstances calendar conflict on the part of defense counsel or the court will justify denial of a motion to dismiss by a defendant who was not incarcerated awaiting trial. The plight of the incarcerated defendant presents the most compelling case for relief; by limiting our opinion to this class of defendants, we minimize the impact of our decision upon counties in which, owing to a lack of defenders and facilities, criminal cases frequently do not come to trial within the 60-day period of section 1382.

In *Jackson* v. *Virginia, supra*, 443 U.S. 307, the Supreme Court announced a new, constitutionally mandated rule for the review of the sufficiency of the evidence supporting a state criminal conviction challenged in a federal habeas corpus proceeding. Rejecting the previous "no evidence" rule of *Thompson* v. *Louisville* (1960) 362 U.S. 199 [4 L.Ed.2d 654, 80 S.Ct. 624, 80 A.L.R.2d 1355], the court held that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction...[is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." (443 U.S. at p. 318 [61 L.Ed.2d at p. 573, 99 S.Ct. at p. 2789].) Explaining this standard the court said that "this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation omitted.] Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (443 U.S. 307, 318-319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781, 2789].)

California decisions state an identical standard. In *People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649], for example, we said that "The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. [Citation omitted.] The appellate court must determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt." Similar language appears in *People* v. *Reyes* (1974) 12 Cal.3d 486, 497 [116 Cal.Rptr. 217, 526 P.2d 225]; *In re Roderick P.* (1972) 7 Cal.3d 801, 808-809 [103 Cal.Rptr. 425, 500 P.2d 1]; *People* v. *Bassett* (1968) 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777]; and many other cases. (See *In re Frederick G.* (1979) 96 Cal.App.3d 353, 363 [157 Cal.Rptr. 769] and cases there cited.) Evidence, to be "substantial" must be "of ponderable legal significance...reasonable in nature, credible, and of solid value." (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54]; *People* v. *Bassett, supra*, 69 Cal.2d 122, 139.)

■ In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Reilly,*

*supra*, 3 Cal.3d 421, 425.) The court does not, however, limit its review to the evidence favorable to the respondent. As *People* v. *Bassett, supra*, 69 Cal.2d 122, explained, "our task. . .is twofold. First, we must resolve the issue in the light of the *whole record*—i.e., the entire picture of the defendant put before the jury—and may not limit our appraisal to isolated bits of evidence selected by the respondent. Second, we must judge whether the evidence of each of the essential elements. . .is *substantial*; it is not enough for the respondent simply to point to 'some' evidence supporting the finding, for 'Not every surface conflict of evidence remains substantial in the light of other facts.'" (69 Cal.2d at p. 138.) (Fn. omitted.)

The foregoing principles of judicial review are plainly consistent with *Jackson* v. *Virginia, supra*, 443 U.S. 307. Concern respecting the validity of the California standard arises, however, from language in other cases which could be interpreted to suggest that an appellate court should sustain a conviction supported by any evidence which taken in isolation might appear substantial, even if on the whole record no reasonable trier of fact would place credit in that evidence. Justice Elkington, in his dissenting opinion in *People* v. *Blum* (1973) 35 Cal. App.3d 515 [110 Cal.Rptr. 833], catalogs a number of examples. He notes, for example, cases which state that the appellate court need only determine whether there is "any substantial evidence, contradicted or uncontradicted" (35 Cal.App.3d at p. 522), and other cases which indicate that the court should not consider that part of the evidence which would "tend to defeat" the judgment below (*Id.*).

Such language is not necessarily incorrect for it may signify only the rule, recognized in *Jackson* v. *Virginia*, that the court should view the evidence "in the light most favorable to the prosecution" (443 U.S. 307, 319 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781, 2789]). A formulation of the substantial evidence rule which stresses the importance of isolated evidence supporting the judgment, however, risks misleading the court into abdicating its duty to appraise the whole record. As Chief Justice Traynor explained, the "seemingly sensible" substantial evidence rule may be distorted in this fashion, to take "some strange twists." "Occasionally" he observes, "an appellate court affirms the trier of fact on isolated evidence torn from the context of the whole record. Such a court leaps from an acceptable premise, that a trier of fact could reasonably believe the isolated evidence, to the dubious conclusion that the trier of fact reasonably rejected everything that controverted the isolated evidence. Had the appellate court examined the whole record, it

might have found that a reasonable trier of fact could not have made the finding in issue. One of the very purposes of review is to uncover just such irrational findings and thus preclude the risk of affirming a finding that should be disaffirmed as a matter of law." (Traynor, The Riddle of Harmless Error (1969) p. 27.) (Fns. omitted.)

We do not believe it necessary to disapprove past decisions merely because they contain language which could be misconstrued to permit affirmance based on a standard of review which might contravene *Jackson* v. *Virginia, supra*, 443 U.S. 307. We think it sufficient to reaffirm the basic principles which govern judicial review of a criminal conviction challenged as lacking evidentiary support: the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.

█ Cognizant of these principles, we turn to examine the record in the present case. Defendant was convicted of the robbery of employees of Jim Dandy Fast Foods chicken restaurant and two of its customers. Ms. Watley, one of the customers, testified that while she was waiting for her order to be filled, she saw three men enter the restaurant. Another man remained outside in a car. One of the men, armed with a shotgun, went to the counter and confronted the sales clerk. Defendant, who was unarmed, and a third man armed with a knife approached Ms. Watley. Defendant turned her around and pushed her against the counter; his companion took her purse. She began to cry. Defendant, trying to reassure her, told her not to cry, that he would try to get her purse back. Defendant's companion tried to remove the bracelet of a customer, Ms. Washington, who was standing next to Ms. Watley. Defendant told him to let the woman remove the bracelet herself; she did so and handed it to defendant's companion. The three men left together in the waiting car.

Ms. Horton, the restaurant cashier testified that she instructed the sales clerk to hand over the restaurant's money to the robber armed with a shotgun. She also testified that defendant possessed a knife and that he took wallets and watches from some male customers. Ms. Horton's testimony, however, was exaggerated, and inconsistent in several respects from the testimony she gave at preliminary hearing.

Police officers testified that when they stopped the getaway car, three men leapt from the car and escaped. The fourth occupant, defendant Johnson, was apprehended leaving the car. A search of the vehicle uncovered the shotgun, two knives, and Ms. Watley's purse with some of its contents missing.

Defendant testified in his own behalf. He said he met the three other men, whom he knew only by surname or nickname, at a liquor store and went with them to Jim Dandy to buy food. To his surprise the two men who accompanied him into the store started to rob the people there. He took no part in the robbery, but merely attempted to reassure and calm the victims. He left with the other men in the car because it was his car, and he did not want them to take it.

Even without the testimony of Ms. Horton, the testimony of Ms. Watley and the police officers establish a basis upon which a reasonable trier of fact could conclude that defendant was a participant, albeit an unusually kind participant, in an armed robbery. Defendant's own testimony largely corroborates Ms. Watley; his claim that notwithstanding outward appearances he really did not intend to aid in the robbery presents a defense which a reasonable jury could disbelieve. We conclude that substantial evidence supports the conviction, that is, that a reasonable trier of fact could find defendant guilty beyond a reasonable doubt.

3. *The trial court erroneously admitted hearsay evidence, but that error did not prejudice defendant.*

At defendant's trial, a police officer testified that Ms. Washington, the victim of the robbery charged in count II, told him that the robbers took a bracelet from her. Ms. Washington was subpoenaed as a witness, but did not appear at trial.

Defendant's counsel did not object to the officer's testimony, but counsel for codefendant Sumlin objected that the statement was hearsay. The trial court overruled the objection, saying that "The statement is not being offered for the truth of the content; but merely to establish that a statement was made."

To the contrary, Ms. Washington's alleged statement to the officer had no relevance other than to show that a bracelet had, in fact, been stolen from her. No exception to the hearsay rule sanctions admission of the testimony.

We find, however, no prejudice from the admission of the testimony. Ms. Watley testified that she saw one of the robbers take a bracelet from another woman, and defendant Johnson's testimony corroborated her. Thus the hearsay statement was merely cumulative of undisputed evidence demonstrating that Ms. Washington was robbed of her bracelet.

### 4. *Conclusion.*

We find that the trial court erred in failing to grant defendant a hearing on his motion to dismiss charges under section 1382, and so denied defendant his right to a speedy trial. As we have explained, the state is in no position to deny a defendant his right to a speedy trial because the state is unable to provide counsel who can bring the case to trial within the statutory limits. If the state wants to incarcerate a citizen it cannot do so in violation of the state's own obligations and in violation of its own self-imposed conditions of confinement. The state must be a model of compliance with its own precepts.

The court below also erred in admitting certain hearsay testimony. We conclude, however that neither error prejudiced defendant's trial and conviction, and since substantial evidence supports that conviction, we find no ground for reversal.

The judgment is affirmed.

Mosk, J., and Newman, J., concurred.

**RICHARDSON,** I concur in the judgment insofar as it affirms defendant's conviction. I respectfully dissent, however, from the majority's holdings regarding the right to speedy trial.

Just four years ago in *Townsend* v. *Superior Court* (1975) 15 Cal.3d 774 [126 Cal.Rptr. 251, 543 P.2d 619], we decided, by a vote of five to two, the precise issue now before us. In comparing the two rights to speedy trial, constitutional and statutory, we carefully affirmed the distinction between them saying: "The right to a speedy trial is undeniably 'as fundamental as any of the rights secured by the Sixth Amendment' (*Klopfer* v. *North Carolina* (1966) 386 U.S. 213, 223 [18 L.Ed.2d 1, 8, 87 S.Ct. 988]), and we have previously stated in dictum that counsel may not waive this *constitutional* [italics in original] right over his client's objections. (*People* v. *Floyd* [1970] 1 Cal.3d 694, 706-707 [83

Cal.Rptr. 608, 464 P.2d 64].) In contrast, however, the *statutory* [italics in original] right to be tried within 60 days ([Pen. Code] § 1382, subd. 2) cannot properly be termed 'fundamental' in the foregoing sense and therefore beyond counsel's primary control. *Being of statutory origin, a defendant's rights under section 1382 are 'merely supplementary to and a construction of the Constitution.* [Citations.]' (*Sykes* v. *Superior Court* [1973] 9 Cal.3d 83, 89 [106 Cal.Rptr. 786, 507 P.2d 90].) *They do not carry the force or weight of constitutionally mandated imperatives.* In this connection we think it significant that the United States Supreme Court has clearly rejected the proposition that the *constitutional* right to a speedy trial '. . . can be quantified into a specified number of days or months.' (*Barker* v. *Wingo* (1972) 407 U.S. 514, 523 [33 L.Ed.2d 101, 113, 92 S.Ct. 2182].)" (15 Cal.3d at pp. 781-782, italics added.)

It is significant that the majority does not contend that compliance with the 60-day rule is constitutionally compelled. Defendant has a constitutional right to *a speedy trial.* He does not have a constitutional right to a trial *within 60 days.* The majority acknowledges, as it must, that the Legislature may at any time revise section 1382 to increase the permissible pretrial time period, and in the wake of the majority opinion it may well do so. It becomes obvious, accordingly, that the right to be tried within 60 days is not fundamental in any sense. The majority implicitly attempts to make it so by declaring that the right is "personal" to the defendant, and is not subject to waiver by counsel, stressing that "the postponements granted by the trial court in the present case at the instance of the public defender were not granted 'at the request of the defendant or with his consent.'" (*Ante*, pp. 568-569.)

In so concluding, the majority again directly rejects the diametrically opposite position which we took in *Townsend* wherein we said that, "subject to certain limitations, . . . *consent of counsel alone without that of the client, satisfies section 1382, subdivision 2.* While no previous California cases have considered the precise issue, the general import of other cases dealing with similar issues arising from related and parallel circumstances supports such a conclusion. In *People* v. *Kirkpatrick* (1972) 7 Cal.3d 480, 485-486 [102 Cal.Rptr. 744, 498 P.2d 992] for instance, we rejected a speedy trial claim despite the fact that the defendant had personally refused to waive time. Citing *People* v. *Merkouris* ( (1956) 46 Cal.2d 540, 554 [297 P.2d 999], we held that counsel's consent to delays beyond 60 days is sufficient, at least where the continuances are reasonable. In *People* v. *Wilson* (1974) 40 Cal.

App.3d 913 at page 915 [115 Cal.Rptr. 619], the Court of Appeal upheld the trial court's grant of continuances at counsel's request where no affirmative consent was obtained from the defendant, the court stating in dictum that 'even if appellant had voiced an objection, his attorney would have had authority to seek continuance over the client's protest. [Citations.]'" (15 Cal.3d at p. 780, italics added.)

Even earlier, and in a more general context, in *People* v. *Hill* (1967) 67 Cal.2d 105, 114 [60 Cal.Rptr. 234, 429 P.2d 586], Justice Peters speaking for our unanimous court emphasized that, except where doing so would demonstrate incompetency of counsel, an attorney may ordinarily waive his client's rights as to matters of trial tactics and "control court proceedings." Indeed, as noted by Justice Peters, in the usual situation counsel's control over court proceedings is so general that he need not inform his client of the right before waiving it for him. (P. 115.)

Thus, the majority today not only reverses our own very recent *Townsend* holding but departs abruptly, as well, from substantial California precedent. Furthermore, it chooses to do so in a case in which the People were ready to proceed to trial at all times. Three of the four continuances in question were requested by defense counsel, the fourth by the court itself. In my view, a defective record thereby produces a bad rule causing an erroneous result.

The majority construes section 1382 to require a *dismissal* of the criminal proceedings in all cases where the defendant does not make a *personal* waiver of the statutory period or request his counsel to do so, unless "good cause to the contrary is shown." (§ 1382.) We thus arrive at the crux of the majority's decision. What is "good cause"? Admittedly displeased with overcrowded courtrooms and overworked public defenders, as are all observers of the criminal justice scene, the majority focusing its attention on incarcerated defendants holds that "chronic" crowding of the criminal court system does not constitute "good cause" for the purpose of section 1382. The majority pronounces that the "routine assignment of heavy caseloads to understaffed [public defenders'] offices, when such practice foreseeably will result in the delay of trials beyond the 60-day period without defendant's consent, can and must be avoided." (*Ante*, p. 572.) Apart from the ambiguities raised as to what assignments are "routine," what caseloads are "heavy," what offices are "understaffed," what practices "foreseeably" will result in delays, how are the "heavy caseloads" to be avoided?

The majority, of course, is unable to require the provision of funds for the procurement of additional defense attorneys. It lacks the power to direct the construction of more courtrooms. It may not reorder the priorities of local government, for these are matters entirely within the province of state, county, and municipal entities in evaluating local needs. Rather, the present majority imposes a cruder solution to the problem. By main force it directs the dismissal of all those criminal proceedings involving incarcerated defendants, which because of "calendar congestion" cannot be brought to trial within the 60-day period. The majority thereby assures the discharge of a significant number of criminal cases which, *through no fault of the People or the prosecution*, cannot be brought to trial within 60 days. The majority apparently hopes that this spectre of wholesale dismissal of criminal cases will somehow cause a shock effect, thereby serving as a whiplash to force obstinate state and local governments to restructure the criminal justice system.

It should be noted that although the majority speaks particularly of continuances requested because of "calendar conflicts," the reasoning of the opinion implicitly disapproves continuances which are requested by appointed defense counsel who may be unprepared for trial because of the press of his own workload. In reaching such a result, the current majority carefully ignores the broader public policy considerations which have been legislatively expressed by the people's representatives in section 1050 and previously discussed: "[I]t shall be the duty of all courts and judicial officers and of all counsel, both the prosecution and the defense, to expedite such proceedings *to the greatest degree that is consistent with the ends of justice*." (Italics added.)

By stripping from appointed trial counsel the authority to determine whether or not to request continuance of the trial date, the majority further heightens the direct "confrontation between *two* of the defendant's rights, the right to a speedy trial constitutionally guaranteed and statutorily implemented and amplified within the time framework of Penal Code section 1382 on the one hand, and his Sixth Amendment right to competent and adequately prepared counsel on the other. In such a situation, in the words of the appellate court in *People* v. *Powell* (1974) 40 Cal.App.3d 107, 148 [115 Cal.Rptr. 109], the trial court must carefully navigate procedurally between 'the Scylla of delay and the Charybdis of ineffective and inadequate representation.'" (*Townsend* v. *Superior Court, supra*, 15 Cal.3d at p. 782, italics added.) It may fairly be predicted that following the effective date of today's pro-

nouncement, unless tempered by a speedy legislative response, burdened trial courts will find themselves faced ever more frequently with the inevitable decision either to force unprepared counsel to proceed to trial or to risk a forced dismissal because the defendant personally refuses to waive time.

The majority further overlooks a fact of life in our criminal courts today. The pendency of trial plays a part in the recognized and judicially approved process of plea bargaining, which leads to the disposition of many criminal cases. If the probability of defendant's facing trial is decreased by use of the majority's dismissal procedure, defendants in substantial numbers may be less likely to enter plea negotiations preferring instead to wait for a possible outright dismissal. The cases which are not settled by plea bargain will result in additional trials, thus adding further to the congested calendars.

I must also emphasize that while the majority limits its holding to those instances in which the defendant is incarcerated pretrial, the practical implications of the majority's interpretation for the day-to-day processing of California's criminal cases are unpredictable and could well prove devastating. The 1979 Report of the Judicial Council to the Governor and the Legislature dramatically underscores the serious consequences of the majority's action. I quote from the report: "Commencing about 1970 the superior courts were able each year to reduce both the number and proportion of cases where the commencement of trial exceeded the 60-day limit. However, since 1974-75 the metropolitan courts have reported increases in the number and proportion of cases with juries sworn more than 60 days from filing. In 1977-78, 11 of the 20 courts reported overall increases in the percentage of cases with juries sworn more than 60 days from the filing of the indictment or information. *Of the 4,268 criminal juries sworn in these courts last year, 2,639 or 61.8 percent were sworn more than 60 days from filing*, ranging from lows of 21.8 percent in San Francisco to highs of *91.4* and *89.9* percent in the San Diego and Santa Clara courts, respectively." (Judicial Council of Cal., Annual Rep. (1979) pp. 85-86, italics added.) The question may legitimately be asked: What will be the effect of the majority's new interpretation upon a system in which *more than 60 percent* of jury cases statewide are now commenced beyond the 60-day period? The majority blithely ignores these realities. In fairness, it would be calumny to suggest that the courts in counties with large metropolitan courts are indifferent to the problems of delay or that the affected public defenders are sluggards. Yet I fear it is the

public that may become the victims of a judicial interpretation of such unnecessary rigidity.

It is noteworthy that the terms of the recently amended Penal Code section 1048 impose additional statutory requirements regarding the scheduling of criminal cases. Under section 1048 courts are now directed, although not mandated, to commence *within 30 days* all criminal actions wherein a minor is detained as a material witness or is the victim, or wherein any person is the victim of a sexual offense committed by the use of force, violence, or the threat thereof. The demands of this section combined with the new obligations which the majority now impose judicially will surely make the scheduling of cases even more difficult and substantially increase the possibility of dismissal, at further risk to the public safety.

In the case before us there is no suggestion whatever that the court and all counsel did other than their best to provide defendant with adequate representation and a prompt hearing, given the available resources. Furthermore, and this is of crucial importance, the majority concedes that *defendant was not prejudiced* by the delay in his trial, which fact the majority relies upon for the very affirmance of his conviction.

We observed in *Townsend, supra*, 15 Cal.3d 774: "We are cognizant of the heavy caseloads resting upon the criminal trial courts of this state and upon the affected prosecutors' and public defenders' offices as well, and for the sheer necessity of the 'trailing' practice here indulged. We have concluded that the trial court adopted the proper course in the matter before us. However, our holding herein is carefully circumscribed. We do not suggest that counsel possesses carte blanche under any and all conditions to postpone his client's trial indefinitely. Counsel's power in this regard is not unlimited. '[A] criminal defendant may not be deprived of a speedy trial because the prosecution—or the defense—is lazy or indifferent, or because the prosecution seeks to harass the defendant rather than bring him fairly to justice . . . .' (*People* v. *Floyd, supra*, 1 Cal.3d 694, 707.) No such circumstances are herein presented." (15 Cal.3d at pp. 783-784.) I would reaffirm the foregoing cautionary limitations and regret the new majority's abrupt and unwise departure from our recent *Townsend* conclusion.

Unless a record clearly reflects circumstances of judicial or prosecutional indifference, or harassment or prejudice to the defendant, and it

most certainly does not in the instant case, we should defer to trial counsel's decisions regarding the management of the trial for it is his responsibility to conduct it, and do so in a manner and according to standards which we have carefully prescribed very recently in *People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859]. Trial courts can be trusted to monitor the cases carefully, constantly sensitive and alert to any instances of abuse or overreaching.

The problem of overcrowded courtrooms is a major concern to all who are involved in the judicial process. However, any necessary fiscal solution does not lie within the traditional province of the appellate courts. Rather, it is for state and local governments to decide on the means of ameliorating the problem. We may, on a case-by-case basis and when appropriate, afford relief by dismissal to those individual defendants who have been denied their right to a speedy trial. We should not, however, by judicial improvisation, and in the absence of prejudice to a defendant, particularly in matters so closely affecting the public safety and welfare, impose our own theories of management on local court systems, thereby reaching arbitrary results which are neither constitutionally compelled nor in the public interest.

Clark, J., and Manuel, J., concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I am compelled to write separately to voice strong disagreement with that portion of the majority opinion which relies on the case of *People v. Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452]. ■ ■ ■ It is indeed unfortunate that this fine opinion is marred by a finding that appellant must prove prejudice even though he was denied his right to a speedy trial.

As Justice Peters pointed out in his dissent in *People v. Wilson, supra*, 60 Cal.2d at page 158, "the trial court, without defendant's consent and against his will, denied him, erroneously, his constitutional and statutory rights, because the trial court rode roughshod over these fundamental rights, because the trial court, illegally, forced him to a trial over which it had no jurisdiction, . . . that in some unexplained and inexplicable manner the trial court regained 'jurisdiction' to try him, and that this error, this fundamental invasion of an important constitutional and statutory right, became immaterial and must be disregarded. Thus, this invasion of fundamental rights, this error that was admittedly prejudicial when committed, becomes, in some magic way purged. The

provisions of article VI, section 4½ [now art. VI, § 13], in some way not explained, make the error, prejudicial when committed, non-prejudicial now. This is illogical and unsound, and a wrongful denial of fundamental rights. It amounts to a judicial repeal of a constitutional and statutory right. The right to a speedy trial cannot and should not be treated so cavalierly."

The majority's error is compounded by its determination that appellant failed to prove prejudice under the *Wilson* test. Even if the holding in *Wilson* is adopted and applied to the facts of this case, I cannot understand how appellant can be held responsible for the failure of his lawyer to bring a pretrial writ when that same counsel refused to follow appellant's wishes that he receive a speedy trial. The majority overlook the fact that appellant's failure to bring a pretrial writ asserting his right to a speedy trial was part of his counsel's underlying failure to properly represent appellant's interest. Also, this court is requiring a person, who is not schooled in legal procedure, to be aware of the fact that he must file a pretrial writ, and his failure to do so will require him to prove prejudice on appeal. I cannot indorse such a rule or such an unfair result.

The petitions of both parties for a rehearing were denied April 24, 1980.