50 Cal.Rptr.3d 554 (2006)
144 Cal.App.4th 602
Vardui Rose BARSAMYAN, Petitioner,
v.
APPELLATE DIVISION OF the SUPERIOR COURT of Los Angeles County, Respondent;
The People, Real Party in Interest.
No. B188695.
Court of Appeal of California, Second District, Division Seven.
November 1, 2006.
Michael P. Judge, Public Defender, Karen Nash and John Hamilton Scott, Deputy Public Defenders, for Petitioner.
*555 No appearance for Respondent.
Rockard J. Delgadillo, City Attorney, Debbie Lew, Assistant Deputy Attorney, Sunnie Lee Daniels and Katherine H. MacKenzie, Deputy City Attorneys, for Real Party in Interest.
WOODS, J.

INTRODUCTION
Petitioner seeks an order requiring the appellate division of the Los Angeles County Superior Court to issue its order instructing the trial court to dismiss a pending misdemeanor prosecution against her pursuant to Penal Code[1] section 1382, subdivision (a)(3)(B).
More particularly, we are called upon to determine whether the 10-day "grace period" set forth in section 1382 was exceeded in violation of petitioner's statutory right to a speedy trial, thereby requiring the pending misdemeanor prosecution to be dismissed. For the reasons hereafter stated, the petition is denied.

FACTUAL AND PROCEDURAL SYNOPSIS
In a misdemeanor complaint filed June 1, 2005, petitioner Vardui Rose Barsamyan ("Barsamyan") was charged with a single count of grand theft in violation of Penal Code section 487, subdivision (a). Respondent is the appellate division of the Los Angeles County Superior Court and has not appeared in this writ proceeding. Los Angeles City Attorney Rockard J. Delgadillo represents Real Party in Interest the People of the State of California.
On June 3, 2005, Barsamyan was arraigned in the airport courthouse Division 141 before the Honorable Donna Groman, orally advised of her rights including the right to be tried within 30 or 45 days, and assigned counsel through the public defender's office. Barsamyan entered a plea of not guilty, requested a jury trial and was released on bail pending trial, never having been placed in custody. The matter was then continued for trial on July 14, 2005. The 45th day after her arraignment fell on July 18, 2005. However, Barsamyan consented to being tried beyond that date.
On September 7, 2005, counsel for Barsamyan announced ready for trial, entitling Barsamyan to be brought to trial on the 10th day thereafter which fell on a Saturday, thereby extending the trial date to the following Monday, September 19, 2005, unless good cause was shown for further delay.
The case was continued by the court to September 15, 2005, the court noting that September 15th was the 8th day of the 10 day grace period. On September 15, 2005, Barsamyan appeared with counsel Deputy Public Defender Karen Nash, who announced that Barsamyan remained ready for trial. Nash represented to the court that she was also announcing ready for trial in a case involving one Gena Veta George, Los Angeles County Superior Court case No. 5WL00886. Deputy Public Defender Nash further represented to the court that the People and her client Gena Veta George were engaged in ongoing negotiations on the George matter, which prompted the court to state it would "send it out just in case."
Barsamyan's counsel later inquired of the court if the Barsamyan matter might be delayed to the next day, within the statutory grace period, representing that the George case might very well be resolved on September 15, 2005. This request prompted the following colloquy *556 among counsel and the court in the George matter (the companion case to Barsamyan, both trailing within the 10-day grace period):
"MS. NASH: Your Honor, on Barsamyan I would ask to trail that to tomorrow. I still haven't heard from the deputy who watched the video so that trial might go away.
"THE COURT: I have been instructed by Department E that if you can't announce ready on bothwell, you can't try both, that we need to continue the second one.
"MS. NASH: I understand that. I am asking to continue it until tomorrow.
"THE COURT: As a new zero of ten?
"MS. NASH: No, within the period.
"THE COURT: I can't do that, so we will need to pick a new zero of ten date on Barsamyan.
"MS. NASH: Your Honor, for the record, I don't think that legally the court can force me to waive time. I am asking to just trail within the period, and we are not waiving time because in my experience, and this is just not the legal reasoning but so the court knows my reasoning behind this is that cases that get sent out for trial don't go; this other case might resolve today so I am asking to come back on nine of 10 or 10 of 10.
"THE COURT: That request to trail is denied, as defense cannot be ready on two different trials at once, unless you wanted to find another trial deputy who is able to step in today to handle Miss Barsamyan's case.
"[Prosecutor] MR. FOX: The file is upstairs with Miss Brown so we do not have that file.
"THE COURT: I am sorry? Barsamyan?
"MR. FOX: Yes. That is the other eight of ten, correct?
"THE COURT: Yes. They need to pick a date.
"MR. FOX: I need to pick a date. It is upstairs with [Deputy City Attorney] Miss Brown.
"THE COURT: Miss Nash needs to get out on the other trial so we are going to need to pick a date right now.
"MR. FOX: I understand.
"MS. NASH: Your Honor, for the record, when People aren't ready to go to trial they ask to trail, so I am just asking to trail; that is the same thing that happens all the time when the prosecutors ask to trail when they are not ready.
"THE COURT: I understand. That request is denied. [¶] Let me just pass this for a few minutes. Mr. Fox, please
"MR. FOX: We just called for it right now. [¶] (Recess)"
Further, on September 15, 2005, the following colloquy occurred:
"THE COURT: Vardui Barsamyan matter. [¶] What is the People's status on that?
"[Prosecutor] MR. AGUADO: Ready.
"THE COURT: Time estimate?
"MR. AGUADO: Four days.
"[Deputy Public Defender] MS. NASH: Your Honor, on this case I have been trying to work out a dispo. I want to get sent out on both cases because I understand it is the practice to send us out to a dispo court first.
"THE COURT: Not necessarily; it depends on how many open courts we have.
"MS. NASH: Miss George mil go to trial.
"THE COURT: We will recall both cases at 10:20.[¶] (Recess)
*557 "THE COURT: Recalling the Vardui Barsamyan matter. [¶] What date did you want on Barsamyan, Miss Nash?
"MS. NASH: Your Honor, I am just asking for a date within the period.
"THE COURT: I know, but if you are not going to get a date within what you consider to be the period, what date do you want? Tomorrow?
"MS. NASH: I am stuck in a rough spot because I can't, I am not waiving time.
"THE COURT: Well then Miss BarsamyanI am going to order her to return tomorrow as a zero of ten. [t] Do you wish to be heard, Miss Brown?
"[Prosecutor] MS. BROWN: Your Honor, just so the record is clear, this is outside the original statutory period so therefore unless she is announcing unequivocally ready to proceed today, there is (unintelligible).
"THE COURT: I have made that determination but then the question becomes is there any objection to setting a new zero of ten from the People?
"MS. BROWN: I am seeing the witness nodding his head and I am not sure if that is in the affirmative that it is okay as zero of ten or that there is an objection. If I may have a brief moment.
"THE COURT: Yes. [¶] (Pause)
"MS. BROWN: No objection to tomorrow.
"THE COURT: Miss Barsamyan, you are ordered to return tomorrow, September 16, 2005, 8:30 a.m. The court will deem that as a new zero of ten. There is no time waiver. And this is over the defense objection to resetting the start of the zero of ten period." (Italics added.)
At 11:00 a.m. on September 15, 2005, the Gena Veta George case was settled by means of a plea without the necessity for a trial.
Barsamyan's case was again called on September 16, 2005. The court continued the matter to September 22, 2005, for trial. Counsel for Barsamyan represented that she had never become engaged in a trial of the George case. The court then stated that when the George case was sent out for trial, prosecutor Brown asked Barsamyan's case to be classified as no longer ready, which is what the court did and reset the matter as zero of ten.[2]
On September 21, 2005, Barsamyan moved to dismiss the action pursuant to section 1382. The trial court denied the motion for the "same reasons as I denied the request to trail."[3]
Barsamyan's petition for writ of prohibition/mandate, filed on October 21, 2005, in the appellate division of the Los Angeles County Superior Court, seeking an order compelling the trial court to grant her motion to dismiss, was denied on January 26, 2006, without opposition having been filed. No statement of reasons was given by the appellate division.

DISCUSSION
The heart of the controversy centers on a problem that more than likely recurs on a daily basis in the criminal courts. Section 1382 is the statutory guarantee of a right to a speedy trial in California. At controversy is the proper interpretation of the so called 10-day grace period set forth *558 in section 1382, subdivision (a)(3)(B). That subdivision provides for an exception to the mandatory requirement of dismissal for failure to afford a defendant a speedy trial and in relevant part, the statute states: "The court, unless good cause to the contrary is shown, shall order the action to be dismissed in the following cases: [¶] (3) ... when a defendant in a misdemeanor ... case is not brought to trial ... within 45 days after the defendant's arraignment. ... However, an action shall not be dismissed under this subdivision if ... [¶] (B) The defendant requests or consents to the setting of a trial date beyond the 30-day or 45-day period.[4] In the absence of an express general time waiver from the defendant, the court shall set a trial date. Whenever a case is set for trial beyond the 30-day or 45-day period by request or consent, expressed or implied, of the defendant without a general waiver, the defendant shall be brought to trial on the date set for trial or within 10 days thereafter." (Italics added.)

I. Contentions
Petitioner contends the statutory time limit to commence trial expired September 19, 2005, and the unjustified delay beyond that date mandated dismissal of the misdemeanor complaint. Petitioner further contends (1) "Since petitioner's counsel was never engaged in a conflicting trial, petitioner cannot be found to have impliedly consented to delay of his [sic] trial" and (2) "[e]ven if petitioner impliedly consented to delay of his [sic] trial, a consensual delay to a date within the statutory time limit does not extend that time limit." We disagree. Applying an abuse of discretion standard, we conclude counsel for petitioner impliedly consented to a delay of trial when she announced ready in more than one case and as a result good cause was shown for continuing the matter to September 16, 2005, as day zero of ten, triggering a new 10-day period.
Initially, it should be noted that Barsamyan was not held over in custody so we are not confronted with a situation where the defendant has suffered a long period of incarceration before being brought to trial. Second, there is no issue whether Barsamyan consented to being tried beyond the expiration date of the initial and longer period of 30 or 45 days. The record is clear that her consent was given and she even lodged a request through counsel to be tried after expiration of the 30- or 45-day period. Third, the accusatory pleading pertained to a purported violation amounting to a misdemeanor as opposed to a more serious charge involving a felony.
The relevant period in controversy is the 10-day "grace period" set forth in section 1382, subdivision (a)(3)(B) quoted in relevant part, supra. During this relevant 10-day grace period, Barsamyan's counsel was committed to handling two matters, namely Barsamyan's case and the other for defendant George. Both of the cases required Barsamyan's counsel, Nash, to inform the court of the status of the two cases, which Nash forthrightly did by stating she was announcing ready for trial on both cases, but that negotiations were ongoing in the George case which might eliminate the necessity to try the George matter, but from Nash's current vantage point "Miss George will go to trial." The record is clear that Nash expressly objected to having Barsamyan tried beyond the 10-day grace period. The record is also clear that the trial court continued the matter beyond the 10-day grace period on the belief that counsel for Barsamyan was precluded from announcing ready for trial on *559 two cases at the same time, both within the 10-day grace period. The trial court utilized this reasoning to continue Barsamyan's trial date, thereby triggering a new 10-day grace period.

II. Petitioner impliedly consented to delay of her trial since counsel was engaged, in a conflicting trial.
As noted, counsel for both sides initially announced ready for trial in the Barsamyan matter on September 7, 2005. Although the parties did not dispute the date of commencement of trial, we note however, the readiness of deputy public defender Nash on September 7, 2005, appears questionable since Ms. Nash claimed she was "still requesting discovery before the trial date" and "I don't think I have received anything .... [n]o rap sheets, videos or things like that have been turned over." A jury trial was then scheduled for Thursday, September 15, 2005, as day eight of the 10-day grace period provided by section 1382, subdivision (a)(3)(B).
On September 15, 2005, both the prosecution and deputy public defender Nash announced ready for trial in the People v. George case. When the trial court inquired about a possible plea disposition in George, Ms. Nash stated the prosecution's offer in George involved grand theft but defendant George was "not going to take anything theft-related." Ms. Nash also confirmed on September 15, 2005, that "Miss George will go to trial" and estimated trial would take four days. Although Ms. Nash claims to have been ready for trial on both the George and Barsamyan cases, these statements by Ms. Nash indicate otherwise. Clearly, Ms. Nash was not available to try the Barsamyan case when she claimed the "George matter will go to trial." Further, Ms. Nash did not offer to find another deputy public defender who could step in on September 15, 2005, to handle the Barsamyan case, even though the court gave her the opportunity to do so.
The decision of the California Supreme Court in Townsend v. Superior Court (1975) 15 Cal.3d 774,126 Cal.Rptr. 251, 543 P.2d 619 is our loadstar in resolving this issue. In this seminal case, the Supreme Court was faced with a petition for writ of prohibition which would have required the trial court to dismiss a felony action for failure to bring the case to trial within the time constraints of section 1382, subdivision (2) as the statute then provided. As in this case, the longer period of time within which to bring the case to trial was not an issue (60 days for a felony prosecution). Defendant had acquiesced through his counsel to being tried beyond the longer period. As in this case, the focus was on the shorter 10-day grace period provided by the statute. More particularly, the court was concerned with the effect of defense counsel announcing "ready" for trial but was "trailing" in another case. In denying the writ of prohibition, the court spoke in terms of "legitimate commitments in another case." (Id. at p. 783, 126 Cal. Rptr. 251, 543 P.2d 619.)
The question is whether, as stated in Townsend, counsel was legitimately committed to another case and not free to commence trial proceedings on September 15, 2005. The record is clear that the George matter was still pending and in fact did not settle until after the Barsamyan matter was called for trial on September 15, 2005. As a result, we find consent to the delay was implied because Ms. Nash had "legitimate commitments" in the George case even though ultimately the George matter ended in a plea disposition. (See Townsend v. Superior Court, supra, 15 Cal.3d at p. 783, 126 Cal.Rptr. 251, 543 P.2d 619.) Moreover, if we accepted petitioner's argument that an attorney must *560 "actually be engaged in trial" in a conflicting case for the implied consent rule to apply, trial courts would be required to potentially wait several days or longer to determine whether a case actually proceeds to trial or is resolved without a trial. Petitioner's contention is impractical and we reject this argument.

III. The implied consent to delay within the statutory period extends the 10-day grace period.
Relying principally on Owens v. Superior Court (1980) 28 Cal.3d 238, 168 Cal.Rptr. 466, 617 P.2d 1098, petitioner's position is that "[e]ven if petitioner impliedly consented to delay in his [sic] trial (which ... he [sic] did not), that delay was within the then applicable 10-day `grace period' of Penal Code section 1382 [and] ... delays within a statutory time period, whether caused or consented to by the defendant, do not serve to toll or extend the time limit." (Emphasis in original.)
A closer reading of Owens, however, does not support petitioner's position for the reason that a delay within the 10-day grace period was not the basis for decision in Owens. Rather, a careful reading of Owens reveals the decision applies to a strict application of section 1382, i.e. "60 consecutive calendar days" without deductions for periods of delay (tolling or extending the time limit). Owens does not indicate a parallel rule applies to delays within the 10-day grace period and any such suggestion or interpretation of a holding in Owens, we respectfully classify as dictum. (Owens v. Superior Court, supra, 28 Cal.3d at p. 250, fn. 12, 168 Cal.Rptr. 466, 617 P.2d 1098.) Owens relied heavily on the Judicial Council's 1959 report urging the Legislature to clarify ambiguities in section 1382 and explained the Judicial Council recommended amending the section to provide for dismissal of all cases not brought to trial within the 60-day statutory period unless good cause has been shown "except when the defendant has consented to the trial being set beyond the statutory period, and that in the latter situation the case must be dismissed if it is not brought to trial within 10 days after the last date for trial to which the defendant consented. This will clarify the present rule by ... fixing 10 days as a reasonable time for trial after expiration of the period consented to by the defendant and ... eliminating the possibility that delays attributable to defendant which are wholly within the statutory period may prevent dismissal." (Id. at p. 245, 168 Cal.Rptr. 466, 617 P.2d 1098.) Thus, the Judicial Council itself in proposing amendments that were actually adopted, distinguished between "the statutory period" and the 10-day grace period and made it clear 10 days ran from the date last agreed to by the defendant once outside the statutory period and expressly provided that delay within the statutory period did not affect the defendant while providing no similar protection for delay in the grace period.
For the reasons stated above and under the circumstances of this case, we find good cause existed for the trial court to continue the matter to September 16, 2005, thereby triggering a new 10-day grace period.

DISPOSITION
The petition for writ of mandate is denied.
PERLUSS, P.J., concurs.
JOHNSON, J., dissenting.
As the majority opinion recognizes, this undoubtedly represents a common scenario in Los Angeles. A busy courthouse with a host of cases to be tried and settled. A public defender assigned to try or settle *561 several of those cases essentially at the same time. And the several clients of that public defender, all with their speedy trial rights at stake.
In People v. Johnson,[5] the California Supreme Court announced several principles to guide the resolution of the dilemmas this common scenario inevitably generates. First, "the consent of appointed counsel to a postponement of trial ..., if given solely to resolve a calendar conflict and not to promote the best interests of his client, cannot stand unless supported by the express or implied consent of the client himself."[6] This is because, "when the public defender, burdened by the conflicting rights of clients entitled to a speedy trial, seeks to waive one client's right, that conduct cannot be justified on the basis of counsel's right to control judicial proceedings. The public defender's decision under these circumstances is not a matter of defense strategy at all; it is an attempt to resolve a conflict of interest by preferring one client over another. As a matter of principle, such a decision requires the approval of the disfavored client."[7]
Second, "[a] defendant's right to a speedy trial may be denied simply by the failure of the state to provide enough courtrooms or judges to enable defendant to come to trial within the statutory period." [8] Thus, "[u]nreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn."[9]
The underlying rationale for the above propositions was best expressed by Justice Tobriner, the author of People v. Johnson, in his dissent to Townsend v. Superior Court,[10] written five years before Johnson. "If an affluent defendant chooses to employ a counsel who is involved in many other cases, then the courts, quite appropriately, can require the defendant to wait until his selected counsel is ready for trial; if the delay is unacceptable to the defendant, he can always engage another, less burdened attorney. The indigent defendant, however, can exercise no such option. If the public defender who is appointed to represent him is already handling so many cases that the defendant's case must `trail' beyond the 60-day period, the indigent necessarily loses his statutory right to a speedy trial. He must take his turn in the public defender's long line of undertakings and await a trial date after the expiration of the 60-day period contemplated by section 1382 when the beleaguered public defender has finally disposed of all the preceding cases. The `trailing' practice, as thus employed, completely negates the indigent defendant's right to a speedy trial.
"Moreover, the above discussion additionally demonstrates that the `trailing' practice, as pursued in this case, also denied defendant the equal protection of the laws, for it deprived him of the benefits of section 1382 simply on the basis of his indigency. The courts have repeatedly held, of course, that when a state grants a right to criminal defendants generally, it must guarantee that indigent defendants *562 can avail themselves of the right. [Citation.]
"On its face Penal Code section 1382 guarantees to all defendants, rich or poor, the right to be brought to trial within 60 days of arraignment. In the instant case, however, defendant suffered a denial of this section's protection simply because his indigency necessitated resort to the understaffed public defender's office and the trailing practice permitted appointed counsel to waive defendant's right to speedy trial over defendant's objection. Because an affluent defendant could not be compelled to abide by his counsel's waiver in similar circumstances, the trailing practice denies an indigent defendant the equal protection of the laws.
[T]he controlling precedents of both the United States Supreme Court and this court establish beyond dispute that to satisfy constitutional standards an attorney appointed to represent an indigent must be capable of affording such defendant the effective assistance of counsel. [Citations.] A county does not meet this constitutional obligation when it appoints a counsel who, because of his own heavy caseload, is unable to bring the defendant's case to trial within the statutorily mandated time period. The state cannot rely upon the obligations which an appointed counsel owes to other clients to excuse its denial of the effective protection of the present defendant's right to a speedy trial.
"... [T]his case presents one relatively straightforward and fundamental question: May a county effectively repeal an indigent defendant's right to a speedy trial simply by refusing to appoint a sufficient number of public defenders? While I do not disparage the financial burdens currently faced by local authorities, it has long been clear that such considerations cannot justify the deprivation of a criminal defendant's constitutional rights."[11]
Given the author's view a trial delay attributable to a public defender's caseload denies the defendant his constitutional rights to both effective assistance of counsel and equal protection of the laws, it is not surprising to find the majority opinion in People v. Johnson undercuts the basic holding of Townsend. That holding was to the effect a defense lawyer's "request or consent" to a trial date beyond 60 (or 45) days waives the defendant's speedy trial rights even if the defendant himself objects. It was based on the Townsend majority's finding the defense counsel rather than the defendant is entitled to "request or consent" to a trial date, even if it is beyond the statutory period.[12] This holding, rather than the trial court's restarting of the 10-day "grace" period, was the only issue actually decided in Townsend and then essentially overruled in Johnson. It is true the trial court had restarted the 10-day clock in Townsend when the parties appeared ready to try the case on the last day of the initial 10-day grace period. But the Supreme Court did not justify that particular action by the trial court or even address it.
As a result, the precise issue presented by this case is not resolved by Townsend, despite what the prosecution argues and the majority opinion holds. That precise issue is whether a defendant's request or consent[13] to a revised date within the 10-day *563 "grace" period authorizes the trial court to start, against defendant's expressed opposition, a second grace period extending beyond the original one. A related question is whether a defendant's consent to a date (along with the 10-day grace period accompanying that date) is legitimately characterized as a consent only to that 10-day span of time or rather to that span and as many additional 10-day periods as the trial court may tack on because of short delays defendant's counsel necessarily requests within the initial 10-day period or within a subsequent 10-day period.
In my opinion, under the better view and the one most consistent with the principles and rationale expressed in Johnson and Owens[14] a defendant who requests or consents to a trial date beyond the 60 or 45-day limit is agreeing only to a 10-day time period commencing with the requested date and not to any date beyond the end of that 10-day period. A defendant does not waive his right to a speedy trial by requesting or consenting to a date beyond the 60 or 45-day limit set forth in 1382. No, instead the new date and its accompanying 10-day time frame substitutes for the initial 60 or 45-day limit and becomes the new measure of a constitutionally timely trial.
Consequently, delays a defendant requests or consents to within the 10-day period are the equivalent of defense-requested delays within the 60 or 45-day period. For the same reasons the Supreme Court in Owens held those delays are not counted when considering whether the 60 or 45-day limit has been exceeded, they should not count when considering whether the substitute 10-day period has been exceeded. This conclusion is only reinforced by Johnson and its rationale, when as here the defendant's requested delay within the ten-day period was prompted entirely by the public defender's caseload and the trial court's insistence that defender choose another client and the resolution of his case over defendant and her case. To use that delay as grounds for imposing a new 10-day extension to the original 10-day grace period is doing exactly what the Supreme Court said could not be done. In referring to a delay within the 10-day grace period caused defense counsel's obligations in other trials during that period, the Supreme Court observed, "an appointed attorney may not so waive the speedy trial rights of one of his clients in order to favor the speedy trial ... of another."[15]
In this case, not only did the public defender have two clients whose cases had *564 to be settled or tried in a short period of time but the trial court compelled her to involuntarily choose one over the other by refusing to wait even a few hours to see if the other defendant's case settledas it did. Then because of what the Johnson court characterized as "routine" court congestion the trial judge received orders from above that the one-day delay the public defender finally agreed to was to restart the 10-day clock even though that new date was within the original 10-day period. The public defender, on behalf of her client, immediately objected on speedy trial grounds to the restart of the 10-day clockand appropriately so. In the words of the Supreme Court, "[u]nreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the state's criminal-justice system are limited and that each case must await its turn." [16]
For these reasons, and in the circumstances of this case, I would issue a writ ordering the trial court to vacate its denial of petitioner's motion to dismiss and to grant that dismissal.
NOTES
[1] All further statutory references are to the Penal Code unless context requires otherwise.
[2] The transcript of the proceedings of September 15, 2005, however, clearly indicates that Nash was at all times insisting that Barsamyan's matter not be delayed beyond the applicable 10-day time limit.
[3] We infer the grounds for the denial was on the basis that an attorney cannot be ready for trial in more than one case at a time.
[4] The 30-day period in the statute refers to a defendant who is in custody. Barsamyan was never in custody so the 45-day period is the relevant time period.
[5] People v. Johnson (1980) 26 Cal.3d 557, 162 Cal.Rptr. 431, 606 P.2d 738.
[6] People v. Johnson, supra, 26 Cal.3d at page 567, 162 Cal.Rptr. 431, 606 P.2d 738.
[7] People v. Johnson, supra, 26 Cal.3d at pages 566-567, 162 Cal.Rptr. 431, 606 P.2d 738.
[8] People v. Johnson, supra, 26 Cal.3d at page 571, 162 Cal.Rptr. 431, 606 P.2d 738.
[9] People v. Johnson, supra, 26 Cal.3d at page 571, 162 Cal.Rptr. 431, 606 P.2d 738.
[10] Townsend v. Superior Court (1975) 15 Cal.3d 774, 126 Cal.Rptr. 251, 543 P.2d 619.
[11] Townsend v. Superior Court, supra, 15 Cal.3d at pages 788-790, 126 Cal.Rptr. 251, 543 P.2d 619 (dis. opn. of Tobriner, J.).
[12] Townsend v. Superior Court, supra, 15 Cal.3d at pages 780-781, 126 Cal.Rptr. 251, 543 P.2d 619.
[13] In this case, as is the usual pattern, the defense counsel's "request or consent" is the same as if uttered by the defendant because the defendant did not personally register a contrary preference, as he did in both Townsend and Johnson.
[14] Owens v. Superior Court (1980) 28 Cal.3d 238, 168 Cal.Rptr. 466, 617 P.2d 1098. This case is discussed in the majority opinion, which acknowledges it holds defendant-requested delays are not deducted when calculating whether a defendant has been brought to trial within the 60 or 45-day period defined in 1382.
[15] Owens v. Superior Court, supra, 28 Cal.3d at page 250, footnote 12, 168 Cal.Rptr." 466, 617 P.2d 1098. In Owens, the defendant had objected to any further delay on January 4 which the Supreme Court found should have activated the 10-day clock. Both parties, relying on Townsend, had assumed the defense counsel's conflicting engagements overrode the defendant's preferences and treated the termination of those engagements as the start date for the 10-day clock. But in Owens, even using that revised start date the prosecution had failed to bring the case to trial within the 10-day grace period. The critical factor, however, is that the Supreme Court treated delays attributable to defense counsel's conflicting responsibilities to other clients the same whether they occurred during the 10-day grace period or during the initial 60-day or 45-day statutory periods.
[16] People v. Johnson, supra, 26 Cal.3d at page 571, 162 Cal.Rptr. 431, 606 P.2d 738.