Filed 3/22/13  P. v. Houston CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C068103 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F03413) |
| v. | |
| ROY LEE HOUSTON, | |
| Defendant and Appellant. | |

In three separate instances, defendant Roy Lee Houston committed gang related shootings.  In one of those instances, he killed Donald McCall.  Convicted by jury of murder with a special circumstance, as well as various assaultive crimes, with enhancements, defendant appeals.  He contends:  (1) the trial court erred by refusing to instruct the jury on accomplice testimony and (2) there was insufficient evidence to sustain the gang enhancement as to two of the crimes.  We conclude:  (1) any error in failing to instruct the jury on accomplice testimony was harmless because there was evidence corroborating that testimony and (2) the expert testimony was sufficient to sustain the gang enhancement.

1

FACTS

We recount the facts in the light most favorable to the verdicts. (See *People v. Snow* (2003) 30 Cal.4th 43, 66.)

Defendant committed his crimes on three separate dates in about a six-week period in 2005.

*February 17, 2005*

There were gang tensions between gang members from the Manors in North Sacramento and the Del Paso Heights Bloods, defendant's gang. Three men from the Manors (Donald McCall, Joseph McCoy, and Randall Hudson) were "stunting," which means they were showing off by driving slowly with the doors open and playing music. Defendant shot at the car, killing McCall.

Later that day, defendant went to Manuel Lutin's house and gave Lutin the gun he used to shoot at the men from the Manors to put in Lutin's safe. A couple of weeks later, defendant retrieved the gun from Lutin.

*March 13, 2005*

Defendant saw two men from the Manors (Donald Spivey and Clarence Daniels) in a car. Defendant fired five shots at the car, using the same gun he used to kill McCall. He returned the gun to Lutin.

*March 31, 2005*

Kenneth Bell, who defendant believed was a Crips gang member from Texas, intervened in a fight between Bell's female cousin and another female. Defendant, who was wearing red, was offended by the intervention because he wanted to videotape the fight. Defendant said, "[H]ome boy, you not doing nothing." But Bell persisted in taking his cousin away from the fight. Defendant pulled a gun from his pocket, pointing it at Bell. Seeing the gun, Bell told defendant that he had no problem with defendant. Bell went to his car, and, as Bell drove away, defendant fired two shots at the car.

2

PROCEDURE

The district attorney charged defendant by information as follows:

*February 17, 2005 Crimes*

Count one:  murder of Donald McCall (Pen. Code, § 187, subd. (a)), with a special circumstance of discharging a firearm from a motor vehicle (Pen. Code, § 190.2, subd. (a)(21)).

Count two:  attempted murder of Randall Hudson (Pen. Code, §§ 187, subd. (a); 664).

Count three:  attempted murder of Joseph McCoy (Pen. Code, §§ 187, subd. (a); 664).

Count four:  shooting a firearm at an occupied vehicle (Pen. Code, § 246).

*March 13, 2005 Crimes*

Count five:  attempted murder of Clarence Daniels (Pen. Code, §§ 187, subd. (a); 664).

Count six:  shooting a firearm at an occupied vehicle (Pen. Code, § 246).

*March 31, 2005 Crimes*

Count seven:  attempted murder of Kenneth Bell (Pen. Code, §§ 187, subd. (a); 664).

Count eight:  shooting a firearm at an occupied vehicle (Pen. Code, § 246).

*Enhancements*

The information also charged (1) discharge of a firearm as to counts two, three, five, and seven (Pen. Code, § 12022.53), with the discharge in count one resulting in death (Pen. Code, § 12022.53, subd. (d)), and (2) a gang enhancement (Pen. Code, § 186.22, subd. (b)) as to each count except count one.

*Verdicts*

A jury found defendant guilty as follows, including the special circumstance and enhancements:

3

Counts one through four:  as charged.

Count five:  attempted voluntary manslaughter (Pen. Code, § 192, subd. (a); 664), with firearm use (Pen. Code, § 12022.5, subd. (a)(1)) and gang enhancements (Pen. Code, § 186.22, subd. (b)).

Count six:  grossly negligent shooting (Pen. Code, § 246.3) with a gang enhancement  (Pen. Code, § 186.22, subd. (b)).

Counts seven and eight:  as charged.

*Sentencing*

The state prison sentence imposed was complex, with several indeterminate terms (including life without parole and other life terms), as well as a total determinate term of 67 years four months.  Since defendant makes no contention of error as to the sentencing, we need not break it down further.

## DISCUSSION

### I

*Jury Instruction on Accomplice Testimony*

Defendant contends that the trial court erred by failing to give the jury CALCRIM No. 334, which informs the jury that testimony of an accomplice must be corroborated, because Manuel Lutin was an accomplice.  He also contends that the error violated his federal due process rights.  We conclude that any error was harmless because there was evidence that corroborated Lutin's testimony.  Also, failing to give an accomplice testimony instruction does not implicate federal rights.

Penal Code section 1111 defines an accomplice "as one who is liable to prosecution for the identical offense charged against the defendant . . . ."  The section further provides:  "A conviction cannot be had upon the testimony of an accomplice unless it can be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

4

" ' "[W]henever the testimony given upon the trial is sufficient to warrant the conclusion upon the part of the jury that a witness implicating a defendant was an accomplice,' " the trial court must instruct the jury, sua sponte, to determine whether the witness was an accomplice. [Citation.] If the testimony establishes that the witness was an accomplice as a matter of law, the jury must be so instructed. [Citation.] In either case, the trial court also must instruct the jury, sua sponte, '(1) that the testimony of the accomplice witness is to be viewed with distrust [citations], and (2) that the defendant cannot be convicted on the basis of the accomplice's testimony unless it is corroborated . . . .' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 982.)

"Whether a person is an accomplice within the meaning of [Penal Code] section 1111 presents a factual question for the jury 'unless the evidence permits only a single inference.' [Citation.] Thus, a court can decide as a matter of law whether a witness is or is not an accomplice only when the facts regarding the witness's criminal culpability are 'clear and undisputed.' [Citations.]" (*People v. Williams* (1997) 16 Cal.4th 635, 679.)

"A trial court's error in instructing on accomplice liability under [Penal Code] section 1111 is harmless if the record contains 'sufficient corroborating evidence.' [Citation.] Corroborating evidence may be slight, entirely circumstantial, and entitled to little consideration when standing alone. [Citations.] It need not be sufficient to establish every element of the charged offense or to establish the precise facts to which the accomplice testified. [Citations.] It is 'sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth.' [Citation.]" (*People v. Valdez* (2012) 55 Cal.4th 82, 147-148.)

"[T]he requirement under [Penal Code section] 1111 that 'a conviction cannot be had upon the testimony of an accomplice unless it be corroborated' is a matter of state law, which does not implicate a federal constitutional right. [Citations.]" (*Barco v. Tilton* (C.D.Cal. 2010) 694 F.Supp.2d 1122, 1136.)

5

Here, we need not determine whether Lutin was an accomplice because there was other evidence connecting defendant to the crimes.

As to the February 17 and March 13 crimes, defendant's fingerprint was found on the gun used to commit those crimes. As to the March 31 crimes, the victim, Kenneth Bell, identified defendant. Therefore, Lutin's testimony was corroborated as to every crime, and any error in not giving the accomplice testimony instruction was harmless.

II

*Sufficiency of Evidence of Gang Enhancements*

Defendant contends that there was insufficient evidence to support the gang enhancement to the crimes committed on March 31 because the evidence did not show that he committed the crimes for the benefit of the gang or that he intended to promote, further, or assist criminal conduct by gang members. He also contends that his conviction on insufficient evidence violated his due process rights. We disagree.

" 'In reviewing the sufficiency of evidence under the due process clause of the Fourteenth Amendment to the United States Constitution, the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' ([*People v.*] *Rowland* [(1992)] 4 Cal.4th [238,] 269 . . . .) We apply an identical standard under the California Constitution. (*Ibid.*) 'In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)" (*People v. Young* (2005) 34 Cal.4th 1149, 1175, italics omitted.) In reviewing the sufficiency of the evidence, "a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.]" (*Id*. at p. 1181.) We will reverse for

6

insufficient evidence only if ' " ' "upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " ' (*People v. Manriquez* (2005) 37 Cal.4th 547, 577.)

Establishing the gang enhancement requires a two-part showing. (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 322.) The prosecution must establish the underlying crime was "[1] committed for the benefit of, at the direction of, or in association with any criminal street gang, [2] with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (Pen. Code, § 186.22, subd. (b)(1).)

Defendant asserts: "The only reasonable inference from the evidence is that [defendant] committed the shooting because he felt personally disrespected by the efforts by Kenneth Bell and his associates to stop a fight that [defendant] wanted to record with a video camera." To the contrary, viewing the evidence in the light most favorable to the verdict, there was ample evidence to establish the elements of the gang enhancement.

Officer Brian Bell testified as an expert on gangs. He testified that gang members commit violent crimes to gain respect. They also commit these crimes to strike fear in others, thus dissuading them from testifying against gang members. Officer Bell testified, speaking of gang members: "If you are disrespected by a rival gang member . . . , you're expected to somehow challenge that act of disrespect. And it's normally by committing some kind of violence against the rival gang member for disrespecting you. If you don't retaliate based on that act of disrespect, then you're going to be seen as weak within the image of your own gang."

Given a hypothetical with the same facts as the March 31 crimes, Officer Bell gave his opinion that a Bloods gang member dressed in red, as was defendant, would feel disrespected by a known Crips gang member interfering in the attempt to film a fight and would feel the duty to react violently in order to avenge the slight by a rival gang member. This expert opinion, therefore, established inferentially that defendant

7

committed the crimes for the benefit of his gang and that defendant intended to promote his gang in doing so.

Defendant's argument fails to draw the inference in the light most favorable to the verdict. It is by that incorrect standard that he can conclude that he acted only out of feeling personally disrespected. Accordingly, because the evidence was sufficient to establish the elements of the gang enhancement for the March 31 crimes, defendant's contention is without merit.

DISPOSITION

The judgment is affirmed.


      NICHOLSON    , J.


We concur:


      BLEASE    , Acting P. J.


      MURRAY   , J.