Filed 4/24/13  P. v. Ansley CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C070469 |
| Plaintiff and Respondent, | (Super. Ct. No. CH028607) |
| v. | |
| EDWARD ANSLEY, | |
| Defendant and Appellant. | |

A jury found defendant Edward Ansley guilty of possessing a sharp instrument in a penal institution.  In a bifurcated proceeding, defendant admitted 21 prior strikes.

Sentenced to a state prison term of 25 years to life consecutive to his current term, defendant contends that insufficient evidence supported the verdict and that the trial court erred by instructing the jury on constructive possession.  We shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Around 8:30 a.m. on December 10, 2010, correctional officers at High Desert State Prison, where defendant was an inmate, were conducting cell searches, which included using a metal detection wand.  Correctional Officer Stephen Hobbs, on duty as a housing officer, heard a positive indication from a detection wand employed by his

1

partner as he held it near defendant's buttocks.  The wanding was done in the "day room," an open area far from any metal which could give a false positive.

Officer Hobbs escorted defendant, now handcuffed and wearing only white boxer shorts, to a contraband watch holding cell in a different building.[1]  The cell is constructed of metal mesh on all sides, so that a person inside can be observed from outside, and is so small that an occupant can only stand, without being able to move any substantial distance.[2]  Before putting defendant in the cell at 8:40 a.m., Officer Hobbs inspected it and found it free of contraband and in good condition.  After putting defendant in the cell, Officer Hobbs recorded his observations of defendant every 15 minutes in a log (offered in evidence as an exhibit).

Officer Hobbs remained outside the cell observing defendant for about an hour and one-half. But the officer's attention was then diverted (for a period he estimated on direct testimony as about five minutes) when he had to help other officers subdue a combative inmate coming out of a nearby cell.[3]

After that distraction, Officer Hobbs's attention was drawn back to defendant's cell by "[a] very foul odor[,]" "like someone pulled the lid off a septic tank."  The officer

---

[1]    Officer Hobbs testified that the shorts of inmates placed in contraband watch holding cells are normally taped at the waist and legs, but he could not recall whether defendant's shorts were taped.

[2]    Photographs of the holding cells, with a person inside, were offered in evidence as exhibits.

[3]    Officer Hobbs admitted he had previously testified that he did not know for how long he was distracted.  He was sure, however, that it could not have been for much longer than five minutes.

The observation log shows that Officer Hobbs's last notation before defendant was removed from his cell was made at 10:25 a.m.  Officer Hobbs noted defendant's removal from the cell at 10:40 a.m.  Officer Rodriguez then made two notations:  at 10:50 a.m., "removed from cell to retrieve object," and at 11:05 a.m., "back in holding cell."

2

spotted a "white, brownish object" on the floor of the cell. He got another officer to contact the investigative services unit (ISU) to inspect the object.

ISU Officers Rodriguez and Brackett arrived and observed defendant still in the cell, handcuffed, and wearing white boxer shorts taped at the waist and legs. Officer Rodriguez spotted the object on the floor; it was white with brown fecal matter on it which appeared to be fresh.

After removing defendant from the cell at 10:40 a.m., Officer Rodriguez picked up the object and washed it off. What remained was an outer "sheath" or "packaging" consisting of transparent plastic wrapped over white paper, covering a piece of sharpened metal attached to a plastic handle. The object was too wide to have gone through the wire mesh of the holding cell walls.

According to Officer Rodriguez, it is common for inmates to conceal weapons in their rectal cavities after enclosing the weapons in protective sheaths like the one found here. Officer Rodriguez was aware that even when placed in holding cells in handcuffs and with their shorts taped according to protocol, inmates can manipulate weapons out of their rectal cavities, remove the weapons through their shorts, "dig [them] out through their waist area in the back area and pull [them] out that way." Normally, such an event would leave evidence in the form of "[t]orn shorts, fecal matter on the hands and fecal matter within the shorts itself [sic]." Officer Rodriguez did not inspect defendant's shorts, hands, or shoes, however (which he admitted he should have done), because he knew that Officer Hobbs had inspected the cell before putting defendant inside; therefore, he concluded on that basis that the object on the cell floor came from defendant.

Defendant did not put on any evidence. His counsel argued that because the officers' investigation was "very sloppy," the prosecution had failed to prove beyond a reasonable doubt the weapon came from defendant and had not been on the cell floor "for who knows how many hours" before it was observed.

## DISCUSSION

## I

### *Sufficiency Of The Evidence*

Defendant contends there was insufficient evidence to support the verdict. He reasons that the jury could have found him guilty only by inferring: "(a) [defendant] somehow secreted a sharp metal object inside his rectum before officers' arrival; (b) then, while [defendant]'s hands were both handcuffed behind his back, [defendant] was able to pull out the sharp metal object from inside his anus without injuring himself sufficiently to bleed enough to warrant the officers' attention; (c) [defendant] was able to remove the object from underneath his clothing without disturbing the tape that created a virtually sealed envelope out of his shorts; (d) [defendant] somehow managed to throw or place that object in a corner of the cell, all without making noise or leaving any trace of evidence, AND; (e) . . . [defendant] was able to do all this in the brief time Officer Hobbs'[s] attention was diverted by the other inmate." According to defendant: "If not physically impossible, such a feat is highly improbable in light of the totality of the evidence." We are not persuaded.

We review a claim of insufficient evidence under the substantial evidence standard. We consider the evidence, including the reasonable inferences therefrom, in the light most favorable to the verdict, and affirm if a reasonable jury, so construing the evidence, could have returned that verdict. (*People v. Valdez* (2004) 32 Cal.4th 73, 104; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

Here, despite defendant's tendentious account of the evidence, the inferences he has set out are not the only reasonable inferences the jury could have drawn from the physical facts presented.

4

Officer Rodriguez's testimony that inmates have been known to secrete weapons in their rectums, then surreptitiously remove them, even while under continuous observation, handcuffed, and with shorts taped, was unrebutted. Therefore, despite defendant's attempt to discredit that testimony by repeating the word "somehow," it constituted substantial evidence that the "feat" he calls "highly improbable" could be done and he did it according to the jury.

Defendant's assertion that he could not have removed the weapon from his person without causing injury and bleeding, even though it was protected by a paper and plastic sheath, is sheer speculation. Officer Rodriguez's testimony as to the physical evidence left behind by this method of removing a concealed weapon did not mention injury or bleeding. Thus, the jury could reasonably infer that defendant could have committed the charged offense without injuring himself.

Defendant's assertion that the jury must have found he "somehow managed to throw or place" the weapon on the cell floor "without making noise or leaving any trace of evidence" mischaracterizes the evidence. There was no evidence that he threw anything, and the prosecutor did not so argue. There was also no evidence either that defendant evacuated the weapon "without making noise" or that he could not have done so silently. (In any event, the disturbance going on simultaneously could have prevented Officer Hobbs from hearing any noise made by defendant.) Finally, the evidence was overwhelming that defendant did not fail to "leav[e] any trace of evidence" when he deposited the weapon, along with the substance Officer Rodriguez had to rinse off before inspecting the weapon, on the cell floor.

Defendant's claim that it was improbable he could have evacuated the weapon "in the brief time Officer Hobbs'[s] attention was diverted" makes little sense. All the

5

evidence suggested that the diversion lasted for several minutes, which is presumably ample time to do what defendant was alleged to have done.

To find instead that the weapon was already in the holding cell when defendant was placed there, and might have been there for hours, the jury would have had to reject the following undisputed evidence: (1) a metal detection wand gave a positive indication when passed near defendant's buttocks, with nothing nearby that could have produced a false positive; (2) Officer Hobbs inspected the holding cell and found it free of contraband and in good condition before placing defendant inside; (3) Officer Hobbs continuously observed defendant in the holding cell for at least an hour and one-half without detecting anything suspicious; (4) after the distraction that prevented him from observing defendant for a few minutes, he suddenly perceived an odor "like someone pulled the lid off a septic tank"; (5) immediately afterward, he saw an object on the cell floor; (6) that object turned out to be a weapon with fecal matter on it; and (7) Officer Rodriguez observed that the fecal matter was fresh. In light of that evidence, however improbable defendant's method of secreting and removing the weapon might seem to a person unfamiliar with inmate practices, the conclusion that defendant secreted and removed the weapon by that method was the only reasonable conclusion to draw. Sufficient evidence supported defendant's conviction.

II

*Constructive Possession*

Defendant contends the trial court erred by instructing the jury it could convict based on constructive possession, a theory of liability which did not fit the facts. Because sufficient evidence supported defendant's conviction based on actual possession, and the jury was instructed to disregard any instruction that did not fit the facts, any possible error in instructing on constructive possession was harmless. (See *People v. Crew* (2003) 31 Cal.4th 822, 849; *People v. Jackson* (1996) 13 Cal.4th 1164, 1225.)

6

DISPOSITION

The judgment is affirmed.


                                                      ROBIE            , J.



We concur:



          NICHOLSON     , Acting P. J.



          BUTZ        , J.


7