Filed 9/11/14  P. v.Perger CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>CAMERON ELLIOT PERGER,<br><br>     Defendant and Appellant. | F067282<br><br>(Super. Ct. No. F12908472)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrel, Judge.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Cornell, Acting P.J., Gomes, J., and Franson, J.

## INTRODUCTION

Appellant Cameron Elliot Perger was found guilty, at the conclusion of a jury trial on May 16, 2013, of two counts of disobeying a domestic relations court order (Pen. Code, § 273.6, subd. (a), counts 9 & 10).[1]  Appellant was acquitted of eight other counts including:  three counts of inflicting corporal injury on a spouse or a cohabitant (§ 273.5, subd. (a)), one count of assault by means likely to cause great bodily injury (§ 245, subd. (a)(4)), two counts of first degree burglary (§§ 459 & 460), and one count of dissuading a witness (§ 136.1).[2]  The trial court suspended imposition of sentence and placed appellant on probation for three years upon various terms and conditions, including that he spend 365 days in jail.  Appellant was granted credit for 236 days already served.

Appellant contends his convictions must be overturned because the evidence adduced at trial was insufficient to constitute a violation of the restraining order as alleged in counts 9 and 10.

## FACTS

Appellant and Brooke Clarke began dating in April 2010 and a month later began living together.  From the allegations in the information and the trial testimony, they had a tumultuous relationship.  On October 15, 2012, appellant and Clarke had a fight that led to appellant punching Clarke in the face.  A friend of Clarke's reported the incident to the police.

On October 15, 2012, Fresno Police Officer Jason Jones was dispatched to a potential domestic violence call involving appellant and Clarke.  That day, Jones called appellant after getting his telephone number from Clarke.  Officer Jones informed appellant that an emergency protective order had been issued against him by a judge and

---

[1]     All statutory references are to the Penal Code unless otherwise indicated.

[2]     Appellant was also acquitted of lesser included offenses on several counts.

appellant was not to contact Clarke in person, by telephone, electronic or written communication, or by other means.  In addition, appellant was to remain one hundred yards away from Clarke, her home, her employment, and her vehicle.  Officer Jones further told appellant the emergency order would expire on October 22, 2012, at 5:00 p.m.

Fresno State Police Detective Joshua Faith testified that he served appellant with a restraining order on October 23, 2012.  Detective Faith executed a proof of personal service (form DV-200), dated October 23, 2012.  This document was filed with the court on October 26, 2012.  The proof of service form filed had a check mark at box "4a," indicating that Detective Faith served appellant with a form DV-109 (Notice of Court Hearing), form DV-100 (Request for Domestic Violence Restraining Order), and a blank form DV-120 (Response to Request for Domestic Violence Restraining Order).  Box "4h" on the DV-200 form was to be checked off if a DV-130 form (Restraining Order After Hearing) had been served.  Box "4h" was not checked on the proof of service form executed by Detective Faith.

Detective Faith testified that the proof of service form "fairly and accurately" reflected the documents he handed to appellant on October 23, 2012.  Detective Faith had known appellant since the seventh grade.  Detective Faith and appellant had a brief conversation.  Appellant thanked Detective Faith for being civil to him and treating him fairly.[3]

When specifically asked on cross-examination whether he handed appellant copies of the restraining order, Detective Faith initially replied, "I believe so.  Yes."  He then

---

**3**     The trial court accepted Exhibits 26, 27, and 28 into evidence.  Exhibit 26 was the DV-200 proof of service form executed by Detective Faith.  Exhibit 27 was the clerk's minutes from the November 7, 2012, hearing on the restraining order sought by Clarke.  Exhibit 28 was the form DV-130 restraining order issued by the trial court on November 7, 2012.

responded, "I don't recall. I believe I did give [appellant] a copy of the order, though. I'm not absolutely positive." On redirect examination, Detective Faith explained he remembered giving appellant documents and that the proof of service accurately reflected what documents he handed to appellant. Detective Faith said that box "4a" was checked off on the proof of service form and that the description of this box indicated he gave appellant the restraining order.

According to the clerk's minutes on November 7, 2012, from the hearing on Clarke's motion for a restraining order, appellant was not present. The trial court granted Clarke's request for a five-year restraining order. The clerk's minutes indicate the court approved a no-contact provision, stay away orders, and an order that appellant move out of Clarke's residence.

The court's restraining order after hearing (DV-130 form) was executed by the trial judge and filed on November 7, 2012.[4] Pursuant to section 836, subdivision (c)(1), the order warns the restrained person that he may be arrested if he disobeys the order. The restraining order includes orders to prevent, among other things, harassment, direct or indirect contact, to stay away from Clarke, and that appellant move out of Clarke's residence. There is no additional proof of service attached to the protective order.

On October 25, 2012, Clarke saw appellant on her way to work. Appellant was standing on a street corner holding a sign that said: "I'm sorry, please forgive me." Clarke drove onto the freeway, pulled over, and called the police. Appellant slowly drove past Clarke on his motorcycle and stared at Clarke.

On November 8, 2012, Clarke came home and found dog treats, a picture, a vase of flowers, and a can of spray paint on her front porch. Along with the items was a letter

---

**4** The top of the DV-130 restraining order has the word "Amended" handwritten on the top left side of the form.

4

that either said, "Love doesn't hurt" or "Love doesn't say I'm sorry" in appellant's handwriting. The note also said that appellant had ordered a new tank for Clarke's motorcycle.[5] Appellant's sister, Chelsea MacIsaac, had also written a note to Clarke and left it on Clarke's front porch.

Clarke came home on November 20, 2012, and again found a can of paint, dog treats, and flowers on her doorstep. A note left with the items read: "Love doesn't hurt and love doesn't say I'm sorry."

Appellant testified, admitting that he had his sister place the items mentioned by Clarke on Clarke's porch. Appellant admitted giving Clarke letters. Appellant was aware of the emergency protective order and that it expired on October 22, 2012. Appellant was "also aware that a criminal protective order had been issued prohibiting [him] from having contact with Ms. Clarke." Appellant admitted he had been subject to a protective order in 2003 and had violated it.

## NOTICE OF RESTAINING ORDER

Appellant contends there was insufficient evidence at trial that he had proper notice of the trial court's restraining order issued on November 7, 2012. The People reply that Detective Faith testified that he gave appellant the restraining order on October 23, 2012. The People also argue that appellant admitted he was aware of the restraining order. As we explain, the record is devoid of evidence that appellant received the restraining order or that a peace officer told him about its provisions as statutorily mandated by section 836, subdivision (c)(2). We therefore reverse appellant's convictions on counts 9 and 10 for insufficiency of the evidence.

---

[5] Clarke testified that a friend of appellant's had wrecked her motorcycle and appellant was supposed to fix it.

In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence--evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. It is the jury, not the appellate court, which must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; see *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320 and *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

In reviewing a challenge to the sufficiency of the evidence, appellate courts do not determine the facts. We examine the record as a whole in the light most favorable to the judgment and presume the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the judgment. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Unless the testimony of a single witness is physically impossible or inherently improbable, it is sufficient for a conviction. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

An appellate court must accept logical inferences that the jury might have drawn from circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) Before setting aside the judgment of the trial court for insufficiency of the evidence, it must clearly appear that there was no hypothesis whatever upon which there was substantial evidence to support the verdict. (*People v. Conners* (2008) 168 Cal.App.4th 443, 453; *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

Appellant was convicted of two counts of section 273.6.**6**  The determination of whether a person has legal notice of the provisions of a protective order is set forth as follows in section 836, subdivision (c)(2):  "The person against whom a protective order has been issued shall be deemed to have notice of the order if the victim presents to the officer proof of service of the order, the officer confirms with the appropriate authorities that a true copy of the proof of service is on file, or the person against whom the protective order was issued was present at the protective order hearing or was informed by a peace officer of the contents of the protective order."

There are three ways a person subject to the limitations of a protective order can receive notice of the provisions of the protective order:  (1) service of the protective order demonstrated by proof of service, (2) being present at the court hearing in which the protective order was issued, or (3) being informed by a peace officer of the contents of the protective order.  Appellant did not receive notice of the protective order by any of these means.

Detective Faith testified that he gave appellant the protective order on October 23, 2012.  Detective Faith further testified that he gave appellant the documents listed in box "4a" of the DV-200 form dated October 23, 2012.  Three documents are listed there:  a form DV-109 (Notice of Court Hearing), form DV-100 (Request for Domestic Violence Restraining Order), and a blank form DV-120 (Response to Request for Domestic Violence Restraining Order).  These documents are notices of the upcoming hearing on Clarke's request for a restraining order, and a document for appellant to file a response

---

**6**     Section 273.6, subdivision (a) provides:  "Any intentional and knowing violation of a protective order, as defined in Section 6218 of the Family Code, or of an order issued pursuant to Section 527.6, 527.8, or 527.85 of the Code of Civil Procedure, or Section 15657.03 of the Welfare and Institutions Code, is a misdemeanor punishable by a fine of not more than one thousand dollars ($1,000), or by imprisonment in a county jail for not more than one year, or by both that fine and imprisonment."

7

for the hearing. None of these documents is a restraining order or a proposed restraining order.

Box "4h" on the proof of service indicating that the trial court's restraining order (DV-130 form) was served on appellant was not check marked. As appellant persuasively argues in his opening brief, Detective Faith could not have served appellant with a court order on October 23, 2012, that was not issued until November 7, 2012.

We note that the handwriting on the top left corner of the actual form DV-130 restraining order indicates that the order itself is amended. Even if Detective Faith served appellant with an unexecuted and proposed form DV-130, there is no way from the current record to verify that the proposed restraining order was the same as the one actually made by the court on November 7, 2012. We find nothing in the record to indicate that Detective Faith was intentionally misleading in his testimony concerning what documents he gave appellant on October 23, 2012. Detective Faith was not precisely certain concerning what documents he handed appellant other than those listed after check marked box "4a." There is insufficient evidence in this record to establish that appellant was personally served with a copy of the trial court's restraining order issued on November 7, 2012.

The parties agree that appellant was not present at the hearing on Clarke's request for a restraining order and that no peace officer called appellant after the November 7, 2012, hearing to inform appellant of the contents of the restraining order. Other than personal service of the restraining order, these were the only other methods of giving appellant notice of the restraining order pursuant to section 836, subdivision (c)(2). Although appellant was given verbal notice on October 15, 2012, of the contents of the temporary restraining order, that order expired on October 22, 2012.

Finally, respondent argues that appellant admitted he was aware there was a restraining order against him. There is no evidence in the record, however, from

8

appellant, other witnesses, or any document indicating that appellant was aware of the contents and conditions of the restraining order. Appellant's acknowledgment that he was aware of the existence of a restraining order is not the same as acknowledgment that he knew the terms of the restraining order. Appellant's testimony on this point is not substantial evidence that the requirements of section 836, subdivision (c)(2) were followed. There is insufficient evidence in the record to establish that when appellant indirectly contacted Clarke on November 8, 2012, and on November 20, 2012, appellant had been properly notified of the terms and conditions of the restraining order.

## DISPOSITION

Appellant's convictions on counts 9 and 10 are reversed because there was insufficient evidence to support either misdemeanor conviction.