Filed 12/22/22  In re A.L. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B316475 (Super. Ct. No. PJ53481) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.L.,<br><br>    Defendant and Appellant. | |

A juvenile court found that A.L. committed murder in the second degree.  (Pen. Code, §§ 187, subd. (a), 189.)  The court found the offense is a felony and fixed the maximum period of confinement at 15 years to life.  A.L. contends the true finding of murder is not supported by substantial evidence.  We affirm.

FACTS

Shane Denick lived in an apartment on the first floor of a two-story building in Los Angeles. Apartment 6 was on the same corridor as Denick's apartment. Apartment 6 was occupied by Daisy, the apartment building manager. The Langdon Street gang controlled the area around the apartment building. A.L. was a member of the gang, as was Daisy.

On October 17, 2019, the day before the murder, Denick saw A.L. on the street in front of the apartment building, cursing. A.L. returned a couple hours later, kicked open the door to apartment 6 and walked away. Hours later, Denick saw A.L. again on the street, angry and cursing.

The next day at approximately 6:30 p.m., Denick saw A.L. and another man standing near apartment 6. A.L. walked into the apartment while the other man remained outside. Within one or two minutes, Denick heard two gunshots.

From a window in front of his desk, Denick saw the man who was standing outside the apartment run away immediately after the gunshots. Immediately after the first man ran, Denick saw A.L. running out of apartment 6. Denick said A.L. was "running fast." There was an object in his waist band. A.L. was holding his right hand against the object as he ran.

Jose Lopez, a member of the Langdon Street gang, was in apartment 6. He was shot three times, twice in the chest. One bullet pierced his heart and was fatal. The other chest shot was potentially fatal.

Denick went to apartment 6. The door was open about a foot. He looked into the apartment and saw a man duck down behind a couch. Denick looked away to tell a disabled neighbor to go back into her apartment. When he looked back, he saw

Christopher Reynoso, also known as "Downs," a Langdon Street gang member, standing in the doorway of apartment 6. Downs said he had been asleep and asked Denick what was happening. Denick said there were shots fired in the apartment. Downs closed the door.

Downs pulled his car up to the back gate. Surveillance video shows people putting Lopez into the car. Downs and Daisy got into the car and drove off in the direction of a hospital. They stopped along the way and tried to administer first aid to Lopez. The police arrived and tried to assist. Downs and Daisy were both crying and distraught when they spoke to the police.

A.L. was arrested a few days later. He told the police he was at his mother's house and later went to his father's house on the night of the murder. He said he knew the victim but was not there when the shooting occurred.

After his arrest, A.L. spoke to his father in a recorded telephone call. A.L. spoke about "Ralphy," a Langdon Street gang member and friend of Lopez. A.L. had heard Ralphy was inquiring about when A.L. would be transferred to county jail. A.L.'s father took that as a threat. A.L.'s father said that all the people A.L. thinks are homeboys are trying to "do you in." A.L. replied that he is trying to get out, and he is not going back to the neighborhood.

In a different telephone call, A.L. told his mother that he did what he "had to do for the hood." It was a "life or death situation." He said, "This thing has got me fucked up. On Langdon Street, got me fucked up, on the hood." He told his mother that he was not going to the neighborhood.

3

DISCUSSION

A.L. contends there is no substantial evidence to support the true finding that he committed a murder.

In reviewing the sufficiency of the evidence, we view the evidence in a light most favorable to the judgment. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We discard evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient verity. (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316.) We have no power on appeal to reweigh the evidence or judge the credibility of witnesses. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.) We must affirm if we determine that any rational trier of fact could find the elements of the crime beyond a reasonable doubt. (*People v. Johnson*, *supra*, 26 Cal.3d at p. 578.)

Denick testified that on the day before the murder he saw A.L. on the street in front of the apartment building, cursing; two hours later A.L. returned and kicked open the door to apartment 6; later in the day Denick again saw A.L. in front of the building, cursing and angry. Obviously, A.L. had a personal problem with someone who occupied apartment 6.

The next day Denick heard gunshots. Shortly thereafter he saw A.L. "running fast" out of apartment 6 holding his right hand over something in his waist band. Evidence that A.L. had a personal problem with someone in apartment 6, coupled with evidence that A.L. was seen running from the apartment shortly after gunshots were heard, holding his hand over something in his waist band, is alone sufficient to conclude beyond a reasonable doubt that A.L. was the shooter. That Lopez was shot three times, twice in the chest, is more that sufficient to show malice.

4

But there is more evidence. Although others were in the apartment at the time of the shooting, A.L. was the only one who fled from apartment 6. That A.L. fled tends to show his guilt. That others did not flea tends to show the danger was over once A.L. left. Moreover, Daisy and Downs, who had been in the apartment, were distraught and tried to help Lopez.

In addition, when the police confronted A.L., he lied and said he was not there at the time of the shooting. Finally, there were telephone calls to A.L.'s mother and father while A.L. was in custody. When A.L.'s father stated that members of A.L.'s gang were trying to kill him, A.L. did not deny it. Instead, A.L. said he was not going back to the neighborhood. A.L. told his mother that he did what he had to do, and that it was a life or death situation. He also told his mother that he was not going back to the neighborhood. A.L.'s statements tend to show that he was the shooter. There is more that enough evidence to support a true finding of murder.

A.L.'s reliance on *People v. Blakeslee* (1969) 2 Cal.App.3d 831 (*Blakeslee*) is misplaced. In *Blakeslee*, defendant was found guilty of murdering her mother. The evidence showed that she had quarreled with her mother, although not around the day of the killing; that she was at the scene of the crime from five to ten minutes before and from five to ten minutes after the killing; and that she gave the police a false account of her movements and denied knowledge of her brother's rifle. In concluding the evidence was insufficient, the Court of Appeal noted that no one witnessed the shooting; no one saw the defendant with a weapon. (*Id*. at p. 838.)

Here, unlike *Blakeslee*, A.L. was seen running fast out of the apartment seconds after shots were fired. He was carrying

5

what was undoubtedly a weapon in his waist band with his hand over it as he ran. In *Blakeslee*, the defendant was not seen running from the apartment at the time of the shooting holding a weapon.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.*

---

*Judge of the Ventura Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California constitution.

6

Fred J. Fujioka, Judge

Superior Court County of Los Angeles

_____

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.