Filed 9/29/23  P. v. Mouton CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MORVONTE JOSEPH MOUTON,<br><br>    Defendant and Appellant. | F084830<br><br>(Super. Ct. No. CR-22-000522)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Dawna Reeves, Judge.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Lewis A. Martinez and Louis M. Vasquez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., Smith, J. and Snauffer, J.

## INTRODUCTION

Appellant Morvonte Joseph Mouton was found guilty by a jury of felony vandalism. He was sentenced to two years' probation and 90 days in jail.

Appellant argues there was not substantial evidence to sustain his conviction because appellant's identity as the perpetrator was not sufficiently proven.

We affirm.

## PROCEDURAL HISTORY

In an information filed on May 3, 2022, the Stanislaus County District Attorney charged appellant with one count of felony vandalism (Pen. Code, § 594, subd. (b)(1); count 1), and misdemeanor possession of a controlled substance, methamphetamine (Health and Saf. Code, § 11377, subd. (a); count 2.)

On July 20, 2022, the trial court granted the prosecution's motion to dismiss count 2. Following a jury trial, appellant was found guilty of count 1. Appellant was sentenced to 90 days in jail and two years' probation.

Appellant filed a timely notice of appeal on August 19, 2022.

## STATEMENT OF FACTS

*Underlying Offense*

On January 21, 2022, Steven Weldon, senior superintendent for a construction company, arrived at a construction site in Modesto at around 5:15 a.m. Weldon was across the street from an auto parts store getting a bag out of his car when he saw an individual throw a rock through the store's window. The headlights on Weldon's truck were turned on and pointed toward the direction of the auto parts store, and Weldon was about 150 feet away from the individual when they threw the rock.

Weldon described the individual as wearing dark clothing, pants, a "hoodie," and a hat, and as having a slim build. After throwing the rock, the individual walked away down the street. Weldon let an employee of the auto parts store know what happened and called the police.

2.

About three minutes later, Weldon spoke with Modesto Police Officer Jacob Crawford, and pointed out the direction the individual went. After speaking with Weldon, Crawford located appellant approximately two blocks from the auto parts store, at around 6:30 a.m. Appellant was wearing a beanie and a jacket, with the jacket hood up over his head. Appellant was also wearing light colored denim jeans.

About 10 or 15 minutes after speaking with Crawford, Weldon received a call from him saying that they had found a suspect and needed Weldon to identify him. Weldon was picked up by Modesto Police Officer John Moss from the construction site and taken to where the suspect was detained. Weldon remained in the police car with Moss, about 30 feet to 50 feet away from the individual. Moss first gave Weldon a "Simmons Admonishment."[1] After requesting the suspect turn around, Weldon identified him as wearing the same clothes and having the same build as the person he saw throw the rock.

*Testimony at Trial*

Appellant testified in his own defense. He stated that on January 21, 2022, he was living at an adult rehabilitation center and had left that morning to smoke a cigarette and use crystal meth. He walked for five minutes before being detained by the officers. During cross-examination, the following exchange occurred:

> "[PROSECUTION]: And when [Crawford] detained you, you asked him [w]hat was thrown or [w]hat happened; is that correct?
>
> "[APPELLANT]: Yes, I asked what they were trying to stop me for.

---

[1] This admonishment directed Weldon to keep an open mind, not to discuss the incident with anyone involved, and that it is just as important to free innocent people as it is to identify individuals that are involved in the case.

"[PROSECUTION]: Eventually when—did you ask [Crawford] what the damage was or what the vandalism was about?

"[APPELLANT]: I don't recall asking him about that, I recall asking him to please go talk to the security guard so they could clear my name.

"[PROSECUTION]: Do you remember [Crawford] telling you that he just responded to the call, he wasn't sure what was thrown or what happened?

"[APPELLANT]: I remember he said he would tell me later about why I was getting detained.

"[PROSECUTION]: And then you said, [t]here was a rock thrown in the building.

"[APPELLANT]: No, I commented that—I commented exactly, [w]hy would I throw a rock at a building because that's what comes to my mind when someone says vandalism because a rock was thrown through my apartment and a rock was thrown through my car window.

"[PROSECUTION]: So you didn't know what was being thrown?

"[APPELLANT]: I didn't know it was a vandalism until I was in the back of the car.

"[PROSECUTION]: And you volunteered to [Crawford] that there was a rock—you're being accused of throwing a rock?

"[APPELLANT]: No. I said—when they said that I was being arrested for vandalism, I said, [w]hy would I do something like that?

"[PROSECUTION]: Did you mention a rock?

"[APPELLANT]: Yes, I did, because that's what comes to my mind when I think of vandalism."

Crawford was recalled as a witness. He testified that when he detained appellant, appellant asked him what was broken. Crawford responded that he wasn't sure what had occurred, and he was just responding to a call. Appellant then brought up that a rock was thrown into a building without any prompting.

## DISCUSSION

### I. Substantial Evidence Supports the Felony Vandalism Conviction

Appellant argues there was insufficient evidence to support the felony vandalism conviction, because appellant's identity as the perpetrator was not sufficiently proven and the eyewitness identification was too generic. We find substantial evidence supports the conviction and affirm.

#### A. Legal Standard

On appeal, this court " 'must determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) We "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

"To entitle a reviewing court to set aside a jury's finding of guilt, the evidence of identity must be so weak as to constitute practically no evidence at all." (*People v. Braun* (1939) 14 Cal.2d 1, 5.) "The general rule, then, is that it is not essential that a witness be free from doubt as to one's identity. He may testify that in his belief, opinion or judgment the accused is the person who perpetrated the crime, and the want of positiveness goes only to the weight of the testimony." (*People v. Lindsay* (1964) 227 Cal.App.2d 482, 494.) "Our courts have held that it is not necessary that any of the witnesses called to identify the accused should have seen his face. [Citation.] Identification based on other peculiarities may be reasonably sure. Consequently, the

identity of a defendant may be established by proof of any peculiarities of size, appearance, similarity of voice, features or clothing." (*Ibid.*)

### B.    Analysis

Appellant argues that Weldon's description was too general and did not describe anything "peculiar" about the suspect. Appellant further argues nothing incriminating was found on appellant connecting him to the offense.

We disagree. Appellant was found only two blocks away from the auto parts store, roughly 10 to 15 minutes after the vandalism occurred, proximately close in both time and place. Weldon's description mostly matched appellant's appearance—he was wearing dark clothes and had a slim build. One particularity Weldon described was that the suspect was wearing both a hat and a "hoodie." Appellant was wearing a beanie and had his jacket hood pulled over his head.

Weldon saw the suspect from about 150 feet away while they were illuminated by his truck's headlights. When Weldon identified appellant as the suspect, he was less than 50 feet away. In both cases, Weldon had clear visibility of appellant.

Finally, appellant himself provided evidence of his identity as the suspect. When Crawford detained him and said that he was just responding to a call, appellant responded by asking why he would throw a rock at a building. Appellant was not told a rock had been thrown at a building and provided that information spontaneously. Appellant attempted to explain away his response, but the jury did not appear to find his explanation credible.

The positiveness of Weldon's identification of appellant goes to the credibility of his testimony, but it was not so weak as to constitute no evidence. Weldon described appellant's clothes and build, and described the particularity that appellant was wearing both a hat and a hoodie. Appellant was also proximately close to the crime scene in both time and place. Finally, appellant knew facts about the vandalism that Crawford did not

initially mention. Taken together, substantial evidence supports the jury's finding that appellant was the perpetrator.

## <u>DISPOSITION</u>

The judgement is affirmed.